Argued March 22, affirmed May 17, 1976

DOTSON, *Respondent,*
*v.*
MOTOR VEHICLES DIVISION, *Appellant.*
(No. 73-5086, CA 5237)
549 P2d 1143

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Roy Dwyer,* P.C., Eugene, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

THORNTON, J.

## THORNTON, J.

The Motor Vehicles Division (Division) appeals from the order of the circuit court which reversed the order of the Division suspending petitioner's operator's license for refusal to take the breathalyzer test.

This case presents two issues for our determination. First, was the breathalyzer refusal report submitted to the Division by the arresting officer a "sworn report" within the meaning of former ORS 483.634(2)? Second, if not, does this affect the authority of the Division to suspend petitioner's operator's license?

Former ORS 483.634(2) (now ORS 487.805(2)) provides that if a driver of a motor vehicle refuses to submit to a breathalyzer test under circumstances where the officer had reasonable grounds to believe that he was under the influence of alcohol, the officer shall prepare a "sworn statement of the refusal and cause it to be delivered to the division." The Division is then required to suspend that person's operator's license, ORS 482.540.

The first question was before the court in *Andros v. Dept. of Motor Vehicles,* 5 Or App 418, 485 P2d 635 (1971). There, as here, the officer did not formally swear before the notary that the report contained the truth. We cited *Ex parte Finn,* 32 Or 519, 52 P 756 (1898), and held that the oath necessary for a sworn report

"* * * could either be administered by the notary to the affiant or 'asseveration must be made to the truth of the matters contained in the affidavit, by the party making it, to the officer, with his sanction.' To asseverate means to affirm or aver positively or earnestly. * * *" *Andros v. Dept. of Motor Vehicles,* supra at 429-30.

We ruled that the report in question was a "sworn report" even though there was no formal swearing, because the officer did make a positive statement to the notary that the report was the truth.

In the case before us the following dialogue bet-

ween counsel for petitioner and the arresting officer took place during the hearing before the Division:

"COUNSEL: When we began this hearing to get one thing clear, the Hearings Officer asked you to swear to tell the truth, raising your right hand and going through that, did Lieutenant Berrand [notary public] as[k] you to do that on the day that you signed this document? Did he ask you to swear that?

"A I don't believe he did.

"* * * * *

"COUNSEL: Okay. So basically what happened is that you told him about the incident, said this is the report you filled out from that incident and signed it and he signed it?

"A Right.

"COUNSEL: Okay. No conversation about this being the truth * * *?

"A That's right, it's an expected relationship."

■  From the above and the rest of the record we conclude that the report was not a "sworn report" even under the liberal interpretation given that term in *Andros.* There was no positive statement to the notary that the report contained the truth as there was in *Andros.* The officer only presented the report to the notary who signed and affixed his seal to it. *See, Dawson v. Secretary of State,* 44 Mich App 390, 205 NW2d 299 (1973).

■  While the swearing need not be that formal procedure employed in courts of law to swear witnesses, it is necessary that there at least be a positive statement by the officer that the report contains the truth. *Andros v. Dept. of Motor Vehicles,* supra at 430.

We now consider whether the failure of the arresting officer to swear to the truthfulness of his report precludes the Division from suspending petitioner's license.

This exact question has been considered by the courts of at least five other jurisdictions. In all but one of those jurisdictions the courts have held that it does preclude the state from suspending an operator's

license. *Wilcox v. Billings,* 200 Kan 654, 438 P2d 108 (1968); *Dawson v. Secretary of State,* supra; *Neely v. State, Dept. of Public Safety,* 308 So2d 880 (La App 1975); *Metcalf v. Dep't of Motor Vehicles,* 11 Wash App 819, 525 P2d 819 (1974). *Contra, Agnew v. Hjelle,* 216 NW2d 291 (ND 1974).

■ The rationale of these cases is that by the inclusion of the word "sworn" the legislature intended just that, namely, that the report be sworn. We find these decisions persuasive. Further, there is good reason for requiring that refusal reports be sworn. Substantial and serious consequences flow from the submission of such reports. Upon the receipt of a refusal report, the Division begins the process of suspending the operator's license of the driver involved. Although the Division is required to notify the driver of his right to request a hearing, if the driver makes no such request his operator's license is revoked automatically, *solely upon the information contained in the report of the arresting officer.* Where such substantial consequences follow the submission of the report, we think it clear that the legislature included the requirement that the reports be sworn to provide some protection, however minimal, that the reports are not specious.

Affirmed.

**SCHWAB, C. J.,** dissenting.

The majority opinion presents substantial reasons for the result it reaches, and states a position that is not without merit. However, I think that requiring literal compliance with the sworn-report statute, and not requiring any showing of prejudice because of noncompliance, is inconsistent with decisions in numerous analogous situations.

I think it safe to generalize that Oregon cases have only required substantial compliance with statutes, and have required the party claiming noncompliance to establish prejudice. *See,* e.g., *Stroh v. SAIF,* 261 Or 117, 492 P2d 472 (1972). Some cases have required

even less. In *State v. Shipley,* 232 Or 354, 375 P2d 237 (1962), *cert denied* 374 US 811, *rehearing denied* 375 US 872 (1963), the court held noncompliance with statutes requiring officers to take an arrestee before a magistrate to be advised of certain rights to be without legal consequence. In *State v. Mathis,* 24 Or App 53, 544 P2d 170, Sup Ct *review denied* (1976), we held noncompliance with a statute requiring recording information presented to a warrant-issuing magistrate to be without legal consequence, at least absent a showing of prejudice.

The interests protected by the statutes involved in *Shipley* and *Mathis* are obvious and substantial. The interest protected by the sworn-report statute here in question is relatively obscure and ephemeral. I cannot rationalize a system of jurisprudence that excuses statutory violations in *Shipley* and *Mathis,* while insisting on literal compliance with a statute in the present situation.

Rationalization would be easier if petitioner's license had been suspended on the basis of the arresting officer's report. Factually, that is not the case. Petitioner's license was suspended because of the arresting officer's sworn testimony at an administrative hearing. *See, City of Portland v. Olson,* 4 Or App 633, 636-37, 481 P2d 641 (1971):

> "Defendant contends * * * that the court must have had a written report of probation violation before it could set revocation proceedings in motion. * * * [D]efendant cites us no statute or precedent which prescribes a *written* report. The sworn testimony the court took was adequate basis for the warrant."

I would hold that violation of the sworn-report statute is irrelevant to the validity of a license suspension based upon sworn testimony at an administrative hearing. Alternatively, I would hold there was substantial compliance with the sworn-report statute. Under either holding, the judgment of the circuit court should be reversed.

I respectfully dissent.