RAYMOND A. VOLCK *v.* BENJAMIN A. MUZIO, COMMISSIONER OF MOTOR VEHICLES (13045)

PETERS, C. J., SHEA, CALLAHAN, SPALLONE and NORCOTT, JS.

Argued May 6—decision released July 28, 1987

*Francis J. Pavetti,* for the appellant (plaintiff).

*Michael J. Lanoue,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Carl J. Schuman,* assistant attorney general, for the appellee (defendant).

SHEA, J. The plaintiff, Raymond A. Volck, appealed to the Superior Court from the suspension of his motor vehicle operator's license by the defendant commissioner pursuant to our implied consent statute, General Statutes § 14-227b.[1] The suspension followed the

---

[1] General Statutes § 14-227b currently provides: "IMPLIED CONSENT TO TEST. REFUSAL TO SUBMIT TO TEST. REVOCATION AND SUSPENSION OF LICENSE. HEARING. (a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine and, if said person is a minor, his parent or parents or guardian shall also be deemed to have given his consent.

"(b) If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and thereafter, after being apprised of his constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that his license or nonresident

plaintiff's refusal to submit to a blood, breath or urine test for the purpose of determining whether he had been operating a motor vehicle under the influence of intoxicating liquor or drugs. The court dismissed his appeal despite its finding that the provisions of the statute pertaining to the refusal to submit to such a test had not been satisfied in two respects: (1) the plaintiff's refusal had occurred before he was placed under arrest; and (2) the police officer's written report of such refusal

operating privilege will be suspended in accordance with the provisions of subsection (d), (e) or (f) of this section if he refuses to submit to such test and that evidence of such refusal shall be admissible in accordance with subsection (f) of section 14-227a and may be used against him in any criminal prosecution, refuses to submit to the designated test, the test shall not be given; provided, if the person refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test as the test to be taken. The police officer shall make a notation upon the records of the police department that he informed the person that his license or nonresident operating privilege would be suspended if he refused to submit to such test.

"(c) If the person arrested refuses to submit to such test or analysis, the police officer shall immediately revoke the motor vehicle operator's license or nonresident operating privilege of such person for a twenty-four hour period and prepare a written report of such refusal. Such written report shall be endorsed by a third person who witnessed such refusal. The report shall be made on a form approved by the commissioner of motor vehicles and shall be sworn to under penalty of false statement as provided in section 53a-157 by the police officer before whom such refusal was made. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and shall state that such person had refused to submit to such test or analysis when requested by such police officer to do so.

"(d) Upon receipt of such report of a first refusal, the commissioner of motor vehicles shall suspend any license or nonresident operating privilege of such person for a period of six months. Any person whose license or operating privilege has been suspended in accordance with this subsection shall automatically be entitled to an immediate hearing before the commissioner. The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor

had not been endorsed by a third person as a witness.[2] The plaintiff has appealed from this decision, maintaining that either of these findings precludes his license suspension and also challenging a finding that the officer had properly informed him of the consequences of refusing to submit to the proffered tests. We affirm the judgment dismissing the appeal.

At the license suspension hearing, the adjudicator assigned by the commissioner relied upon reports of the Groton police department containing the following facts. On June 9, 1984, at 1:45 a.m., a Groton police officer, David Bailey, observed the plaintiff in his automobile on Broad Street in the town of Groton. The car interior dome light was on, the key was in the ignition, the motor was running and the plaintiff occupied the driver's seat. After approaching the vehicle, the officer detected a strong odor of alcohol on the plaintiff's breath and requested him to step out of the car. When the plaintiff emerged from his automobile he fell against the officer and could not stand without support. Bailey reported that the plaintiff had "refused all tests offered and was subsequently placed under arrest."

The plaintiff, who was not represented by an attorney at the license suspension hearing, although he was

or drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis; and (4) was such person operating the motor vehicle. If, after such hearing, the commissioner finds on any one of the said issues in the negative, the commissioner shall reinstate such license or operating privilege. . . ."

Although this current version of General Statutes § 14-227b contains some amendments that became effective after June 9, 1984, the date of the incident resulting in the plaintiff's suspension, these modifications are of no significance in relation to this appeal.

[2] The trial court did not hear any evidence but made these findings from the same documents that had been relied upon by the hearing officer in ordering the license suspension. The defendant commissioner does not dispute those findings. The hearing was "confined to the record." See General Statutes § 4-183 (f).

advised of his right to counsel,[3] raised no objection to any of the police documents presented at the hearing. Although informed of his right to remain silent, he chose to testify. He said that he had been parked at the time the officer appeared and that, because of the heat, he had wanted to use the car air conditioning system. He was "debating" whether to drive because he knew he had had a few drinks.[4] He remembered having refused a breath test, but did not remember any offer of a blood test. He claimed that he would have taken the test requested if he had been told his license would be suspended for failure to do so.

## I

Subsections (b) and (c) of § 14-227b use mandatory language in specifying the procedures to be followed by the police prior to suspension of a motor vehicle operator's license for refusal to submit to the statutory tests for ascertaining a driver's level of intoxication. Subsection (d) nevertheless provides that the license suspension hearing "shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis; and (4) was such person operating the

---

[3] Near the close of the hearing the department of motor vehicles adjudicator again advised the plaintiff that he "might want to consider having an attorney down here." He offered to vacate the proceeding and to reassign the case for a new hearing if the plaintiff wanted to obtain counsel. The plaintiff indicated that he did not wish to engage an attorney to represent him at the hearing.

[4] In this appeal the plaintiff has not challenged the finding of the adjudicator that he was operating his motor vehicle. See State v. DeCoster, 147 Conn. 502, 504, 162 A.2d 704 (1960).

motor vehicle." The department of motor vehicles adjudicator found affirmatively upon each of these four issues, and the plaintiff does not challenge those findings. In *Buckley* v. *Muzio,* 200 Conn. 1, 7, 509 A.2d 489 (1986), this court declared that "[t]he hearing is expressly limited to the four issues enumerated above" and that "the limited issue before the trial court was whether the adjudicator properly applied the statute *as written* to the facts of the case." (Emphasis in original.)

The plaintiff attempts to distinguish *Buckley* on the ground that there the police had followed the procedures specified in § 14-227b, but, nevertheless, the trial court had found that the presumably intoxicated driver did not comprehend the consequences of a refusal to submit to chemical testing after having been properly so advised by the arresting officer. Id., 7–8. Although we agree that, unlike the present case, the circumstances in *Buckley* did not include a finding of noncompliance with any express statutory requirement, we continue to adhere to our declaration that a license suspension hearing must be limited to the four issues set forth in § 14-227b (d).

## A

The trial court found that "the plaintiff refused all tests before he was arrested," concluding that subsection (b) of § 14-227b "requires that he be placed under arrest before he may be requested to submit to tests." This construction is in accord with the language of § 14-227b (b) referring to an operator who "[has] been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor . . . and thereafter . . . refuses to submit to the designated test . . . ." Subsection (b) expressly provides that such a person must be advised not only that his refusal to be tested will result in a license suspension but also

that "evidence of such refusal shall be admissible in accordance with subsection (f) of section 14-227a and may be used against him in any criminal prosecution . . . . " The referenced provision, General Statutes § 14-227a (f), allows, in any criminal prosecution for operating under the influence or with impaired driving ability in violation of subsections (a) or (b) of § 14-227a, the introduction of "evidence that the defendant refused to submit to a blood, breath or urine test requested in accordance with section 14-227b . . . provided the requirements of subsection (b) of said section have been satisfied."[5]

---

[5] General Statutes § 14-227a currently provides in part: "OPERATION WHILE UNDER THE INFLUENCE OF LIQUOR OR DRUG OR WHILE IMPAIRED BY LIQUOR. (a) OPERATION WHILE UNDER THE INFLUENCE. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one percent or more of alcohol, by weight.

"(b) OPERATION WHILE IMPAIRED. No person shall operate a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor. A person shall be deemed impaired when at the time of the alleged offense the ratio of alcohol in the blood of such person was more than seven-hundredths of one percent of alcohol, by weight, but less than ten-hundredths of one percent of alcohol, by weight.

* * *

"(f) EVIDENCE OF REFUSAL TO SUBMIT TO TEST. In any criminal prosecution for a violation of subsection (a) or (b) of this section, evidence that the defendant refused to submit to a blood, breath or urine test requested in accordance with section 14-227b shall be admissible provided the require-

Thus it appears that the legislature has attached certain consequences to departures from the procedures specified in § 14-227b (b) and has provided a substantial incentive for the police to comply with those procedures. It is only by strictly following the statutory requirements that an operator's refusal of chemical testing can be used in a criminal prosecution against him for operating under the influence or with impaired ability. On the other hand, the restriction of a license suspension hearing to the four issues specified in subsection (d) of § 14-227b is indicative of the legislative view that the failure to comply precisely with the requirements of subsection (b) should not prevent suspension of the license of a person, arrested with probable cause for believing he was operating under the influence or with impaired ability as a result of intoxicating liquor, who has refused to submit to the prescribed tests.

The legislative genealogy of our implied consent statute supports our interpretation of § 14-227b (d) not to permit a failure of the police to comply with all the requirements of subsection (b) of that statute to vitiate the license suspension of an operator who has refused chemical testing. The first version of the statute was enacted in 1963 and provided that, if a person arrested for operating under the influence "refuses to submit to either a breath or blood test, at the option of such person the test shall not be given, but if the court or jury, upon request, finds that such person was operating such motor vehicle, the motor vehicles com-

ments of subsection (b) of said section have been satisfied. If a case involving a violation of subsection (a) of this section is tried to a jury, the court shall instruct the jury as to any inference that may or may not be drawn from the defendant's refusal to submit to a blood, breath or urine test. . . ."

Although this current version of General Statutes § 14-227a contains some amendments that became effective after June 9, 1984, the date of the incident resulting in the plaintiff's suspension, these modifications are of no significance in relation to this appeal.

missioner shall suspend or revoke his license . . . ." Public Acts 1963, No. 616, § 2. In 1967 the statute was amended to provide that, at the conclusion of the trial on a charge of operating under the influence, the court or a jury, "upon request of the prosecuting attorney made immediately upon disposition of the case, shall make a finding concerning the following: (1) Whether or not there was probable cause for the arrest of such person; (2) whether or not the refusal to submit to the test was made knowingly and wilfully; and (3) whether such person was operating such motor vehicle." Public Acts 1967, No. 721. Both the 1963 and 1967 enactments indicate the intent of the legislature to make the issue of license suspension for refusal to submit to tests independent of the outcome of the trial of the charge of operating under the influence, although the same factfinder was used to determine both matters.

The link between the criminal proceeding and suspension of an operator's license was further attenuated in 1980 when the statute was amended to remove a provision inserted in 1967 that had made the license suspension provisions of § 14-227b inapplicable "if the charge for which such person was arrested is nolled or changed." Public Acts 1980, No. 80-438, § 4. The amendment expressly allowed a prosecutor to request a determination of the issues relevant to license suspension even after the charge of operating under the influence had been nolled or changed. Public Acts 1980, No. 80-483, § 4. In 1981 another amendment wholly removed the initial resolution of the license suspension issues from the judicial system and created the present administrative procedure of the department of motor vehicles for determination of whether a license shall be suspended for refusing a blood, breath or urine test. Public Acts 1981, No. 81-446, § 3. This amendment imposed the restriction, now contained in subsection (d) of § 14-227b, limiting the scope of the license sus-

pension hearing to the four issues of probable cause, arrest, refusal of testing, and operation of a motor vehicle. Public Acts 1981, No. 81-446, § 3.

In 1983, both § 14-227a and § 14-227b were amended to provide for the admission of evidence of an operator's refusal of testing in a criminal proceeding provided that the requirements of subsection (b) of § 14-227b in regard to such a refusal have been satisfied. Public Acts 1983, No. 83-534, §§ 1, 2. Subsection (d) of § 14-227b, however, was not significantly modified, and continued to limit a license suspension hearing to the four issues specified. Thus, the legislature has manifested its intention that noncompliance with subsection (b), not involving one of the four issues to be determined pursuant to subsection (d), does not preclude the suspension of the license of a driver who refuses to submit to a blood, breath or urine test.

### B

The second deviation from § 14-227b (b) found by the trial court relates to the provision of subsection (c) that, "[i]f the person arrested refuses to submit to such test or analysis, the police officer shall . . . prepare a written report of such refusal" and that "[s]uch written report shall be endorsed by a third person who witnessed the refusal." The report prepared by Officer Bailey bears only his signature and has not been "endorsed by a third person" in accordance with this provision. The trial court, nevertheless, concluded that the nonconformity was of no avail to the plaintiff in attacking the suspension of his license because it did not negate the findings of the adjudicator upon the four issues specified in subsection (d) of § 14-227b that are determinative of whether a suspension is to be ordered for failure to submit to the prescribed tests. The plaintiff does not claim that the absence of the signature of a witness on the report falls within the issues to be

determined pursuant to subsection (d) but maintains, nevertheless, that this deviation from the dictates of subsection (c) defeats the jurisdiction of the commissioner to order his license to be suspended.[6]

Subsection (c) was added to § 14-227b in 1981 when the issues related to license suspension were removed from the criminal setting and transferred by subsection (d) to the department of motor vehicles for administrative determination. Public Acts 1981, No. 81-466, § 3. The restriction of the license suspension hearing to the four issues contained in subsection (d) indicates that compliance with subsection (c) was not intended to be a prerequisite for a suspension.

Subsection (c) of § 14-227b prescribes not only that the "report of such refusal" bear the signature of a witness to the refusal but also that it be sworn to "by the police officer before whom such refusal was made," that it set forth the grounds for probable cause to make the arrest and that it state that the arrested motor vehi-

---

[6] The plaintiff has made a similar jurisdictional argument in respect to his claim that the nonconformity with subsection (b) of General Statutes § 14-227b concerning the sequence of the arrest and the warning requires that his appeal from the license suspension order be sustained. In support of this claim, as well as the claim based upon the nonconformity with the requirement that the report of refusal be witnessed as provided in subsection (c) of that statute, he relies upon several cases from other jurisdictions with implied consent statutes. See *Holland* v. *Parker,* 354 F. Sup. 196 (D.S.D. 1973); *Wilcox* v. *Billings,* 200 Kan. 654, 438 P.2d 108 (1968); *Neely* v. *State Department of Public Safety,* 308 So. 2d 880 (La. App. 1975); *Schutt* v. *MacDuff,* 205 Misc. 43, 127 N.Y.S.2d 116 (1954); *Dotson* v. *Motor Vehicles Division,* 25 Or. App. 393, 549 P.2d 1143 (1976); *Metcalf* v. *Department of Motor Vehicles,* 11 Wash. App. 819, 525 P.2d 819 (1974). None of these cases involves a provision similar to § 14-277b (d) restricting the issues at the license suspension hearing to those prescribed. The plaintiff also relies upon *State* v. *Towry,* 26 Conn. Sup. 35, 41, 210 A.2d 455 (1965), a decision questioning the constitutionality of allowing a police officer to request a blood sample from a driver before having arrested him. That case also was decided prior to the advent in 1981 of the restriction contained in § 14-277b (d) limiting the license suspension hearing to the four issues specified. Public Acts 1981, No. 81-446, § 3.

cle operator had refused the officer's request to submit to a prescribed test. Its evident purpose is to provide sufficient indicia of reliability so that the report can be introduced in evidence as an exception to the hearsay rule, especially in license suspension proceedings, without the necessity of producing the arresting officer. Subsection (c) is analogous to other statutes that provide for the admissibility of documents certified by a proper official. See General Statutes § 52-165 (records of corporations and public officers), § 52-166 (orders and regulations of state officials), § 52-167 (corporation certificates attested by the secretary of state).

The absence of the endorsement of a third person who witnessed the arrested operator's refusal of testing would have rendered Officer Bailey's report inadmissible if the plaintiff had objected thereto. No objection was raised, however, to its use at the license suspension hearing. When hearsay statements have come into a case without objection they may be relied upon by the trier, "in proof of the matters stated therein, for whatever they were worth on their face." *Sears* v. *Curtis*, 147 Conn. 311, 317, 160 A.2d 742 (1960); *Danahy* v. *Cuneo*, 130 Conn. 213, 217, 33 A.2d 132 (1943). The finding of the department of motor vehicles adjudicator on the four issues set forth in § 14-227b (d) as determinative of whether an operator's license is to be suspended for a refusal of testing, therefore, is not flawed by his reliance upon the unwitnessed report of the police officer.

We conclude that neither the failure to arrest the plaintiff before his refusal to submit to the prescribed tests, as subsection (b) directs, nor the failure to have a witness endorse the report of refusal, as subsection (c) provides, is a sufficient ground for overturning the determination of the adjudicator that the plaintiff's motor vehicle operator's license should be suspended pursuant to subsection (d).

## II

The plaintiff challenges the sufficiency of the evidence to support the finding that he refused to submit to a blood, breath or urine test, one of the four findings that subsection (d) of § 14-227b makes essential for a license suspension pursuant to our implied consent statute. The plaintiff focuses upon a finding of the trial court that "the officer did read the form warning on the 'Report of Refusal to Submit to Chemical Tests' and that the plaintiff acknowledged that this was read to him, but did not recall the part about suspension of license."

The commissioner contends that this finding is immaterial because subsection (d) does not include a warning of the consequences of a refusal to submit to testing as one of the issues to be determined at the license suspension hearing. The commissioner relies upon a quotation from our opinion in *Buckley* v. *Muzio,* supra, 8, that "§ 14-227b does not provide a judicial or administrative remedy for the failure of an arresting officer to inform the motorist of the consequences of a refusal to submit to chemical testing." The requirement of a warning that such a refusal will result in a suspension of license is contained in subsection (b). Our analysis in part I A of this opinion plainly requires a modification of this acknowledged obiter dictum[7] in respect to the judicial remedy, since any nonconformity with that subsection renders evidence of a refusal of testing inadmissible in a criminal prosecution for operating under the influence or with impaired driving ability.

---

[7] "General Statutes § 14-227b does not provide a judicial or administrative remedy for the failure of an arresting officer to inform the motorist of the consequences of a refusal to submit to chemical testing. On the facts of this case, however, that issue was not before the trial court and it is not before us. We hold only that General Statutes § 14-227b (d) means what it says and accordingly, that the commissioner, before suspending the plaintiff's license, was not required to find that she understood the consequences of a refusal to submit to chemical testing." *Buckley* v. *Muzio,* 200 Conn. 1, 8, 509 A.2d 489 (1986).

With respect to a license suspension hearing, however, whether an operator was warned of the consequences of refusing to submit to chemical tests is not made one of the issues to be adjudicated pursuant to subsection (d). Although one of the four issues to be determined is whether a driver has refused to submit to chemical testing, his knowledge of the consequences is not an essential factor in deciding whether such a refusal has occurred. The 1967 amendment to § 14-227b required, for a license suspension because of a driver's refusal of testing, a finding that "the refusal to submit to the test was made knowingly and wilfully." Public Acts 1967, No. 721. The "and wilfully" provision was removed by amendment in 1980. Public Acts 1980, No. 80-438, § 4. In 1981, when the license suspension issues were transferred to the department of motor vehicles for determination, the word "knowingly" was also deleted, leaving only the present requirement of a finding that a driver "[d]id . . . refuse to submit to such test or analysis." Public Acts 1981, No. 81-446, § 3. The evolution of the present phraseology of § 14-227b (d) (3), from which the former "knowingly and wilfully" qualification has now been removed, indicates that actual knowledge of the consequences of a refusal to be tested is not an essential ingredient of the requisite finding of such a refusal for the purpose of a license suspension. That finding, for similar reasons, does not encompass the related question of whether the driver has been warned that such a refusal will result in a suspension of his license.

Subsection (a) of § 14-227b provides that "[a]ny person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine . . . . " When a driver refuses a test to which he is deemed by the statute to have consented, that refusal need not be attended by the kind of warning required in criminal proceedings

for a waiver of significant legal rights. The legislature, by limiting the issue at the license suspension hearing to whether a refusal has occurred, has chosen to rely on the presumption that everybody knows the law, including the consequences of breaking it.

We conclude, as did the trial court, that a failure to warn the plaintiff of the consequences of his refusal of testing would not constitute a ground for setting aside the order of suspension. Accordingly, we need not resolve the claim of the plaintiff that the trial court's finding that the warning was properly given was not adequately supported by the evidence.

There is no error.

In this opinion the other justices concurred.