### FRANCIS HARRINGTON *v.* LAWRENCE DELPONTE, COMMISSIONER OF MOTOR VEHICLES (14676)

PETERS, C. J., CALLAHAN, NORCOTT, KATZ and PALMER, Js.

Argued November 3, 1993—decision released March 17, 1994*

---

\* March 17, 1994, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Donald G. Leis, Jr.,* for the appellant (plaintiff).

*Robert T. Morrin,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

CALLAHAN, J. This is the certified appeal of the plaintiff, Francis Harrington, from a judgment of the Appellate Court affirming the trial court's dismissal of his administrative appeal from the suspension of his motor vehicle operator's license by the defendant commissioner of motor vehicles pursuant to the applicable provisions of General Statutes § 14-227b.[1]

---

[1] "[General Statutes] Sec. 14-227b. IMPLIED CONSENT TO TEST. SUSPENSION OF LICENSE FOR REFUSING TO SUBMIT TO TEST OR HAVING ELEVATED BLOOD ALCOHOL CONTENT. HEARING. (a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine and, if said person is a minor, his parent or parents or guardian shall also be deemed to have given his consent.

"(b) If any such person, having been placed under arrest for manslaughter in the second degree with a motor vehicle or assault in the second degree with a motor vehicle or for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and thereafter, after being apprised of his constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that his license or nonresident operating privilege will be suspended in accordance with the provisions of this section if he refuses to submit to such test or if he submits to such test and the results of such test indicate that at the time of the alleged offense the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight, and that evidence of any such refusal shall be admissible in accordance with subsection (f) of section 14-227a and may be used against him in any criminal prosecution, refuses to submit to the designated test, the test shall not be

After a hearing conducted pursuant to General Statutes § 14-227b (f), a hearing officer designated by the

given; provided, if the person refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test as the test to be taken. The police officer shall make a notation upon the records of the police department that he informed the person that his license or nonresident operating privilege would be suspended if he refused to submit to such test or if he submitted to such test and the results of such test indicated that at the time of the alleged offense the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight.

"(c) If the person arrested refuses to submit to such test or analysis or submits to such test or analysis and the results of such test or analysis indicates that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight, the police officer, acting on behalf of the commissioner of motor vehicles, shall immediately revoke and take possession of the motor vehicle operator's license or, if such person is a nonresident, suspend the nonresident operating privilege of such person, for a twenty-four-hour period and shall issue a temporary operator's license or nonresident operating privilege to such person valid for the period commencing twenty-four hours after issuance and ending thirty-five days after the date such person received notice of his arrest by the police officer. The police officer shall prepare a written report of the incident and shall mail the report together with a copy of the completed temporary license form, any operator's license taken into possession and a copy of the results of any chemical test or analysis to the department of motor vehicles within three business days. The report shall be made on a form approved by the commissioner of motor vehicles and shall be sworn to under penalty of false statement as provided in section 53a-157 by the police officer before whom such refusal was made or who administered or caused to be administered such test or analysis. If the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for manslaughter in the second degree with a motor vehicle or assault in the second degree with a motor vehicle or for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and shall state that such person had refused to submit to such test or analysis when requested by such police officer to do so or that such person submitted to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight.

"(d) Upon receipt of such report, the commissioner of motor vehicles shall suspend any license or nonresident operating privilege of such person effec-

defendant commissioner suspended the plaintiff's license to operate a motor vehicle for ninety days, effec-

tive as of a date certain, which date shall be not later than thirty-five days after the date such person received notice of his arrest by the police officer. Any person whose license or operating privilege has been suspended in accordance with this subsection shall automatically be entitled to a hearing before the commissioner to be held prior to the effective date of the suspension. The commissioner shall send a suspension notice to such person informing such person that his operator's license or nonresident operating privilege is suspended as of a date certain and that he is entitled to a hearing prior to the effective date of the suspension and may schedule such hearing by contacting the department of motor vehicles not later than seven days after the date of mailing of such suspension notice.

"(e) If such person does not contact the department to schedule a hearing, the commissioner shall affirm the suspension contained in the suspension notice for the appropriate period specified in subsection (h) of this section.

"(f) If such person contacts the department to schedule a hearing, the department shall assign a date, time and place for the hearing, which date shall be prior to the effective date of the suspension. Upon a showing of good cause, the commissioner may grant one continuance for a period not to exceed ten days. If a continuance is granted, the commissioner shall extend the validity of the temporary operator's license or nonresident operating privilege issued pursuant to subsection (c) of this section for a period not to exceed the period of such continuance. The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for manslaughter in the second degree with a motor vehicle or for assault in the second degree with a motor vehicle or for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle. The fees of any witness summoned to appear at the hearing shall be the same as provided by the general statutes for witnesses in criminal cases.

"(g) If, after such hearing, the commissioner finds on any one of the said issues in the negative, the commissioner shall reinstate such license or operating privilege. If, after such hearing, the commissioner does not find on any one of the said issues in the negative or if such person fails to appear at such hearing, the commissioner shall affirm the suspension contained in the suspension notice for the appropriate period specified in subsection (h)

tive July 8, 1990. In the plaintiff's subsequent appeal from the commissioner's decision to the Superior Court

of this section. The commissioner shall render a decision at the conclusion of such hearing or send a notice of his decision by certified mail to such person not later than thirty-five days or, if a continuance is granted, not later than forty-five days from the date such person received notice of his arrest by the police officer. The notice of such decision sent by certified mail to the address of such person as shown by the records of the commissioner shall be sufficient notice to such person that his operator's license or nonresident operating privilege is reinstated or suspended, as the case may be. Unless a continuance is granted to such person pursuant to subsection (f) of this section, if the commissioner fails to render a decision within thirty-five days from the date such person received notice of his arrest by the police officer, the commissioner shall reinstate such person's operator's license or nonresident operating privilege, provided notwithstanding such reinstatement the commissioner may render a decision not later than two days thereafter suspending such operator's license or nonresident operating privilege.

"(h) The commissioner shall suspend the operator's license or nonresident operating privilege, and revoke the temporary operator's license or nonresident operating privilege issued pursuant to subsection (c) of this section, of a person who did not contact the department to schedule a hearing, who failed to appear at a hearing or against whom, after a hearing, the commissioner held pursuant to subsection (g) of this section, as of the effective date contained in the suspension notice or the date the commissioner renders his decision, whichever is later, for a period of: (1) (A) Ninety days, if such person submitted to a test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight, or (B) six months if such person refused to submit to such test or analysis, (2) one year if such person has previously had his operator's license or nonresident operating privilege suspended under this section, and (3) two years if such person has two or more times previously had his operator's license or nonresident operating privilege suspended under this section.

"(i) The provisions of this section shall apply with the same effect to the refusal by any person to submit to an additional chemical test as provided in subdivision (5) of subsection (c) of section 14-227a.

"(j) The provisions of this section shall not apply to any person whose physical condition is such that, according to competent medical advice, such test would be inadvisable.

"(k) The state shall pay the reasonable charges of any physician who, at the request of a municipal police department, takes a blood sample for purposes of a test under the provisions of this section.

"(l) The commissioner of motor vehicles shall adopt regulations in accordance with chapter 54 to implement the provisions of this section.''

pursuant to General Statutes § 4-183,[2] he maintained that the record contained insufficient evidence to support a finding that the arresting officer was certified to administer the breath analysis test. The trial court, *Maloney, J.,* dismissed the appeal and the Appellate Court affirmed. *Harrington* v. *DelPonte,* 29 Conn. App. 582, 616 A.2d 1160 (1992). We granted certification to appeal the following question: "Did the Appellate Court properly conclude that there was substantial evidence in the record to support the finding that the arresting officer was certified to administer the breathalyzer test?" *Harrington* v. *DelPonte,* 225 Conn. 901, 621 A.2d 284 (1993). We affirm the judgment of the Appellate Court.

The plaintiff was arrested in Windsor on June 3, 1990, for operating a motor vehicle while under the influence of alcohol in violation of General Statutes § 14-227a.[3] The plaintiff submitted to a breath analysis test that indicated a blood alcohol content of 0.155 percent, a figure in excess of the 0.10 percent ratio of alcohol in the blood required for the suspension of the plaintiff's motor vehicle operator's license under § 14-227b (f). On an approved motor vehicle department

[2] General Statutes § 4-183 provides in relevant part: "(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

[3] General Statutes § 14-227a (a) provides: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

form, Walter Bacon, the officer who had administered the breath analysis test, filed a report with the commissioner wherein Bacon noted the results of the test, checked a box that indicated that he was certified to administer the breath analysis test and swore to the truth of his report. The plaintiff thereafter was notified by the commissioner that his operator's license would be suspended for ninety days but that he would be afforded a hearing to contest the suspension if he so desired.

The plaintiff requested and was afforded an administrative hearing. At the hearing, the plaintiff claimed that Bacon's certification to operate the "Intoximeter 3000," the instrument used to measure the plaintiff's blood alcohol content, had lapsed prior to the plaintiff's arrest. He argued therefore that the test results could not have been substantial evidence of his blood alcohol content.

Section 14-227b (f) specifies that a license suspension hearing shall be limited to a determination of the following issues: "(1) Did the police officer have probable cause to arrest the person for . . . operating a motor vehicle while under the influence of intoxicating liquor or drug or both . . . (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle." "The language of General Statutes § 14-227b [f] is plain and unambiguous. The hearing is expressly limited to the four issues enumerated above." *Buckley* v. *Muzio,* 200 Conn. 1, 7, 509 A.2d 489 (1986); see also *Volck* v. *Muzio,* 204 Conn. 507, 512, 529 A.2d 177 (1987). The hearing officer determined

that all the issues specified by the statute had been demonstrated affirmatively. Consequently, he ordered the suspension of the plaintiff's operator's license for a period of ninety days pursuant to § 14-227b (h).

In appealing from an administrative decision, the plaintiff bears the burden of proving that the decision to suspend his operator's license is "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." General Statutes § 4-183 (j) (5); see also *Lawrence* v. *Kozlowski,* 171 Conn. 705, 713–14, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977). "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Citations omitted; internal quotation marks omitted). *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* 216 Conn. 627, 639–40, 583 A.2d 906 (1990).

At the administrative hearing, in support of his claim that Bacon's certification to administer breath analysis tests had lapsed at the time he was arrested, the plaintiff stated that he had spoken to Sanders Hawkins, the chief state toxicologist of the department of health services, and had been told by Hawkins that " 'he did not have in his possession, the copy of the recertification [report] of the officer [who had performed the test] . . . .' " *Harrington* v. *DelPonte,* supra, 29 Conn. App. 583–84. The plaintiff also subpoenaed Bacon's department of health services breath analysis certification forms from the Windsor police department, the most recent of which indicated that Bacon's recertification to operate the "Intoximeter 3000" had expired on Octo-

ber 1, 1989. The plaintiff did not obtain the actual records of the department of health services and chose not to call Bacon to testify about the current status of his certification. The evidence that Bacon was properly certified consisted of Bacon's sworn representation on the form he had filed with the commissioner that he was certified to operate the "Intoximeter 3000" to administer the breath analysis test.

The result in this case is governed by our decision in *Schallenkamp* v. *DelPonte,* 229 Conn. 31, 639 A.2d 1018 (1994), also published today, in which we addressed the same questions raised by this plaintiff. In summary, because there was sworn evidence that Bacon was certified to administer breath analysis tests on the date of the plaintiff's arrest, we cannot say, despite the presence of conflicting evidence, that the record failed to afford a substantial factual basis from which Bacon's certification could have been inferred by the hearing officer. Id., 41. Moreover, Bacon's report and the test results contained therein, on which the commissioner was entitled to rely, were admissible at the plaintiff's administrative hearing irrespective of whether Bacon was certified. Id., 41–42. As a result, even the putative expiration of Bacon's certification would not be a ground for overturning the commissioner's decision to suspend the plaintiff's operator's license because there was evidence to demonstrate affirmatively all the prerequisites for suspension set forth in § 14-227b (f). Id., 42; see *Volck* v. *Muzio,* supra.

The judgment of the Appellate Court is affirmed.

In this opinion PETERS, C. J., NORCOTT and PALMER, Js., concurred.

KATZ, J., concurring in part and dissenting in part. Consistent with my reasoning contained in my separate opinion in *Schallenkamp* v. *DelPonte,* 229 Conn.

31, 43, 639 A.2d 1018 (1994), I continue to adhere to the belief that an arresting officer's valid certification to administer breath analysis tests is essential to the commissioner's proper suspension of a driver's motor vehicle operator's license pursuant to General Statutes § 14-227b (f). Nevertheless, in light of the evidence contained in the administrative record in the present case, I agree with the majority that substantial evidence exists to support the conclusion that the arresting officer was certified. Accordingly, I respectfully concur with the result.