[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Keith M. Hellyar, appeals from a decision of the defendant Commissioner of the State of Connecticut Department of Motor Vehicles ("DMV") suspending his motor vehicle operator's license for a period of six months. The basis of the suspension is the finding that the plaintiff refused to submit to blood alcohol testing in violation of Connecticut's Implied Consent Law, General Statutes § 14-227b. The plaintiff, who is aggrieved by this decision, brings this appeal pursuant to the Uniform Administrative Procedure Act ("UAPA"), §§ 4-166, et seq., 4-183.
The incident underlying this case arose at approximately 12:35 a.m. on May 8, 1999, when Sergeant Timothy Osika, Connecticut State Police, was working a highway construction detail on Interstate 91 ("I-91") in the towns of Rocky Hill and Wethersfield, Connecticut. Three of the four lanes of I-91 were closed in the northbound and southbound directions. The right lane was the only lane open in both directions. While speaking with a disabled motorist on the right shoulder, Sergeant Osika observed a vehicle approach traveling on the right shoulder and passing the slower moving traffic in the right lane in an erratic manner. As the vehicle approached Sergeant Osika, it veered to pass his vehicle and the disabled motorist. Sergeant Osika stepped out into the traffic which was traveling at approximately fifteen to twenty miles per hour in order to speak to the operator, who was later identified as the plaintiff, Keith M. Hellyar. The vehicle in front of Hellyar's vehicle stopped and was waved on by Sergeant Osika, who was wearing his state police uniform and a neon orange high visibility traffic vest. Sergeant Osika's cruiser was parked on the right shoulder with its emergency lights engaged and the area was illuminated by overhead lights.
As Sergeant Osika approached the plaintiff's vehicle, he observed the plaintiff looking at him. Sergeant Osika motioned for the plaintiff to pull over onto the shoulder but the plaintiff's vehicle remained stopped in the roadway. When the sergeant attempted to walk around the vehicle and speak to the plaintiff, the vehicle attempted to pull away and began steering CT Page 16633 into the sign pattern in order to get around the sergeant. The vehicle narrowly avoided striking the sergeant as it pulled away. Sergeant Osika yelled at the operator to stop the vehicle, but the vehicle accelerated rapidly steering into the sign pattern and passing several vehicles as it fled. The plaintiff's vehicle continued down the highway at a high rate of speed in an erratic manner.
Sergeant Osika gave chase and caught up with the plaintiff's vehicle when it was blocked by a crash truck parked inside the sign pattern, approximately 1/4 mile from the initial encounter site. Sergeant Osika approached the plaintiff, who was alone in his vehicle, and ordered him to turn off the engine and drop the car keys out of the window. The plaintiff refused to comply. The plaintiff was uncooperative and refused to comply with instructions concerning keeping his hands in view, keeping his hands away from his body, and moving around inside the vehicle. When Sergeant Osika finally approached the plaintiff outside the rear of the automobile, a strong odor of alcoholic beverage was apparent on the plaintiff's breath and person.
No weapons were found on the plaintiff's person or visible inside the passenger compartment of the vehicle. However, a twelve ounce Miller Lite beer bottle, chilled and partially consumed, was in the center console.
The plaintiff refused to provide his license or other form of identification, which ultimately was removed from his wallet which was on his person. The plaintiff leaned against his car in order to maintain his balance as he spoke to Sergeant Osika. The plaintiff's speech was slurred, he had difficulty maintaining his train of thought with long pauses or lapses of attention, and his eyes were glassy and bloodshot. The plaintiff refused to answer any questions concerning his consumption of alcohol that evening.
At that point, Trooper Evangelista, Connecticut State Police, who also was working the highway construction detail, arrived at the scene to assist. The plaintiff was requested to perform standard field sobriety tests. Prior to any testing, Sergeant Osika asked the plaintiff if he was ill, injured, handicapped or taking any type of medication, and inquired about his education level. The plaintiff refused to answer any questions, becoming increasingly abusive and argumentative.
Each of the field sobriety tests was explained and CT Page 16634 demonstrated for the plaintiff. The plaintiff initially refused to recite the alphabet, but ultimately completed the test with difficulty, speaking slowly. The plaintiff counted backwards, stopping one number before he had been directed to do so. The plaintiff then failed the Nystagmus Eye Gaze Test, and refused to perform both the one leg stand and the walk and turn tests. Sergeant Osika noted that the plaintiff was unsteady on his feet and could not have satisfactorily performed either test. At that point, the plaintiff was placed under arrest by Sergeant Osika. Subsequent to his arrest, the passenger compartment of the plaintiff's vehicle was searched. A plastic shopping bag on the floor board behind the front passenger seat contained a chilled and half consumed 1.75 liter bottle of Seagram's VO whiskey. Four unopened twelve ounce Molson beer bottles were also in the bag.
Trooper Michael Pendleton, Connecticut State Police, arrived to assist Sergeant Osika. Trooper Pendleton read the plaintiff his Miranda rights and transported him to Troop H in Hartford, where he read the plaintiff the Implied Consent Advisory and gave the plaintiff an opportunity to telephone an attorney, which the plaintiff declined. When offered the breath test by Trooper Pendleton, who is a certified operator and instructor for the Intoxilyzer 5000 machine, the plaintiff agreed. Trooper Pendleton demonstrated and explained the test to the plaintiff. He told the plaintiff that the plaintiff needed to put his mouth right over the mouthpiece and make a seal and blow into the machine. He told the plaintiff to continue to blow until told to stop. However, the plaintiff would put his mouth on the machine and simply not blow into the machine, resulting in an insufficient sample reading. Trooper Pendleton gave the plaintiff many opportunities to take the test and to take it correctly but the plaintiff continued to refuse to do so. Trooper Pendleton then considered the matter to be a refusal by conduct which was witnessed by another trooper.
Based upon the foregoing, DMV initiated the current suspension action against the plaintiff. The plaintiff requested an administrative hearing on the suspension. The DMV administrative hearing was conducted before Attorney Mark Gutis, on June 17 and 24, 1999. On June 24, 1999, the hearing officer ordered the plaintiff's motor vehicle operator's license suspended for a period of six months based upon the refusal to submit to a chemical test or analysis. This appeal to the Superior Court followed. CT Page 16635
In this administrative appeal to the Superior Court, the plaintiff appeared pro se, as he did at the DMV hearing. At the hearing in Superior Court, the plaintiff produced a "videotape" which he claimed the state police failed to produce at his DMV hearing despite having been issued a subpoena for the same. The court permitted an oral application to be made for leave to present additional evidence, pursuant to General Statutes § 4-183
(h). Section 4-183 (h) provides, in pertinent part: "If, before the date set for hearing on the merits of an appeal, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court."
The DMV hearing was continued from June 17 to June 24, 1999, for the plaintiff to subpoena videotapes. At the hearing on June 24, 1999, at which both Trooper Pendleton and Sergeant Osika testified, no videotape was produced. Trooper Pendleton testified that:
 I couldn't bring that anyway. I asked my sergeant and he said that it's just a monitoring area. So, if I monitor that room and someone decides that they want to take their own life, then we have a monitoring station which a dispatcher and another trooper would be monitoring that camera for that area.
(Return of Record, ("ROR"), Item 2C, p. 5.)
Subsequent to the DMV hearing, the plaintiff obtained a "videotape" (Plaintiff's Exhibit 1) from the Connecticut State Police which purported to show the events of the early morning hours in question. This court has reviewed plaintiff's Exhibit 1 in its entirety. The videotape lasts over three hours. The videotape is of extremely poor quality and contains no sound. The term "videotape" is actually a misnomer, since what is contained on the videotape is a series of still shots which have been transposed onto the videotape. The videotape appears to be, as Trooper Pendleton testified, a series of photographs from a monitoring system which took a still shot every four seconds from various locations inside and outside Troop H in the early morning hours of May 8, 1999. This court finds that the videotape sheds no light whatsoever on any of the issues involved in this appeal CT Page 16636 and that the evidentiary value of the videotape is nil. Accordingly, this court finds that plaintiff's Exhibit 1 is not material, pursuant to General Statutes § 4-183 (h).
While the plaintiff sought a reversal of the DMV decision in this matter based on the failure to produce the videotape, that remedy is unavailable under the statute. Moreover, the plaintiff has failed to show that the videotape is material, and accordingly, this court will not order further evidence to be taken before the DMV hearing officer.
The second issue raised in this administrative appeal concerns the plaintiff's alleged refusal of the chemical test. The plaintiff claims that there are not sufficient facts in the report to justify the hearing officer's conclusion that the plaintiff refused to take a breath test.
Under General Statutes § 14-227b(g), the hearing conducted before the hearing officer was limited to a determination of the following four issues: (1) did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis; and (4) was such person operating the motor vehicle. In this type of an administrative appeal, the plaintiff bears the burden of proving that the DMV decision to suspend his motor vehicle operator's license was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. Schallenkamp v. DelPonte, 229 Conn. 31, 39 (1994); see also Lawrence v. Kozlowski, 171 Conn. 705, 713-14 (1976), cert denied, 431 U.S. 969 (1977).
"`[R]efusing' to take a breath test may be accomplished by a failure to cooperate as well as by an expressed refusal." Statev. Corbeil, 41 Conn. App. 7, 19, cert. granted on other grounds,237 Conn. 919 (1996) (appeal dismissed upon death of defendant). In Bialowas v. Commissioner of Motor Vehicles, the Appellate Court ruled: "We hold that where it is undisputed that the motorist submitted to the chemical alcohol test, the fact that he failed to provide an adequate breath sample does not automatically constitute refusal within the meaning of § 14-227b. Such refusal must be supported by substantial evidence." Bialowasv. Commissioner of Motor Vehicles, 44 Conn. App. 702, 714-15
CT Page 16637 (1997).
In the present case, the hearing officer's conclusion that the plaintiff refused to take a breath test is supported by the facts and observations of the state police contained in the record, as in Ellam v. Commissioner of Motor Vehicles,47 Conn. App. 509, 514-16 (1998). Here, the machine was checked and operating properly. The machine was operated by Trooper Pendleton, who is not only a certified operator, but also a certified instructor for the Intoxilyzer 5000 machine. Trooper Pendleton testified before the hearing officer that he explained the breathalyzer to the plaintiff and demonstrated how to take the test. He told the plaintiff that "[h]e needs to put his mouth right over the mouthpiece and make a seal and blow into the machine. And continue to blow until I tell him to stop. And he would take the — he would put his mouth on the machine and he simply wouldn't blow into the machine. So we were unable to get a sufficient sample to be tested. And I gave him many opportunities to take this test and to take it correctly and he refused to do so." (ROR, Item 2C, p. 7.) Thus, there is substantial evidence in the record from which the hearing officer could have concluded that the plaintiff refused to submit to the test.
The plaintiff also claims reversible error in the admission of the A-44 form and police reports. At the DMV hearing, the hearing officer admitted as state's Exhibit A, the A-44 form, the results of the breath test showing insufficient samples, and state police investigation reports by Trooper Pendleton and Sergeant Osika, among other documents. In addition, the hearing officer heard the testimony of both Trooper Pendleton and Sergeant Osika.
The plaintiff claims that the admission of the reports violated General Statutes § 14-227b(c), which requires that the report "shall be subscribed and sworn to under penalty of false statement as provided in section 53a-157b by the arresting officer." From the supplemental pages and the testimony of both Sergeant Osika and Trooper Pendleton, the arrest was made by Sergeant Osika, although Trooper Pendleton, who signed the A-44 in the place for the arresting officer, assisted in transporting and processing the plaintiff. The plaintiff's claim must fail because the state police officers themselves came and testified and were available for cross examination. The Connecticut Supreme Court noted in Volck v. Muzio, 204 Conn. 507 (1987), the "evident purpose" of the procedural safeguards in the admission of the CT Page 16638 report "is to provide sufficient indicia of reliability so that the report can be introduced in evidence as an exception to the hearsay rule, . . . without the necessity of producing the arresting officer." Id., 518.
Even if the admission of the police report is viewed as erroneous based upon the plaintiff's argument, the plaintiff's claim must fail because the plaintiff did not and could not show any prejudice as a result of the admission of the police report. Again, here, both troopers were present and testified at the plaintiff's hearing. See O'Sullivan v. DelPonte,27 Conn. App. 377, 385 (1992); Lawrence v. Kozlowski, supra, 171 Conn. 714-15. Thus, the plaintiff's argument must fail.
In a supplemental brief filed just prior to the oral argument in this appeal, the plaintiff appears to raise an issue concerning probable cause for his arrest. As outlined above, there was an abundance of probable cause in this case. In a nutshell, the plaintiff was observed by Sergeant Osika driving in a construction area on the right shoulder, passing slower moving traffic. The plaintiff was operating his vehicle in a erratic manner. When Sergeant Osika attempted to stop the plaintiff, the plaintiff almost struck him with his vehicle, and then accelerated rapidly though the sign pattern passing several vehicles as it fled. The plaintiff's vehicle continued down the roadway in a high speed erratic manner. Sergeant Osika was able to stop the plaintiff's vehicle only when the plaintiff's vehicle was blocked by a crash truck parked inside the sign pattern in the construction zone. When finally stopped, the plaintiff was uncooperative, refused to comply with instructions, and had a strong odor of alcoholic beverage on his breath and person. A twelve ounce Miller Lite beer bottle, chilled and partially consumed, was in the center console. The plaintiff was unsteady on his feet, his speech was slurred, he had difficulty maintaining his train of thought, and his eyes were glassy and bloodshot. The plaintiff refused to answer many questions, and became increasingly abusive and argumentative. Thereafter, the plaintiff failed various field sobriety tests.
Clearly, based on the foregoing, there was a reasonable and articulable suspicion to stop the plaintiff's vehicle, State v.Lamme, 216 Conn. 172, 184 (1990), and thereafter, probable cause to arrest the plaintiff on a charge of driving while under the influence of intoxicating liquor. Price-Crowley v. Kozlowski, CT Page 1663949 Conn. App. 481, 484-86, cert. denied, 247 Conn. 919 (1998).
Accordingly, the DMV decision to suspend the plaintiff's Connecticut operator's license for a period of six months will not be disturbed. The plaintiff's administrative appeal from that decision is, therefore, dismissed.
Michael Hartmere, Judge