LOIS SCHALLENKAMP *v.* LAWRENCE DELPONTE,
COMMISSIONER OF MOTOR VEHICLES
(14678)

PETERS, C. J., CALLAHAN, NORCOTT, KATZ and PALMER, Js.

32

Argued November 3, 1993—decision released March 17, 1994*

*Donald G. Leis, Jr.,* with whom, on the brief, was *Francis S. Holbrook II,* for the appellant (plaintiff).

*Robert T. Morrin,* assistant attorney general, with whom were *Kathryn Mobley,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, for the appellee (defendant).

* March 17, 1994, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

CALLAHAN, J. This is the certified appeal of the plaintiff, Lois Schallenkamp, a resident of Springfield, Massachusetts, from a judgment of the Appellate Court affirming the dismissal by the trial court of her appeal from the suspension, pursuant to the applicable provisions of General Statutes § 14-227b,[1] of her nonresident motor vehicle operating privilege by the commissioner of motor vehicles.

---

[1] "[General Statutes] Sec. 14-227b. IMPLIED CONSENT TO TEST. SUSPENSION OF LICENSE FOR REFUSING TO SUBMIT TO TEST OR HAVING ELEVATED BLOOD ALCOHOL CONTENT. HEARING. (a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine and, if said person is a minor, his parent or parents or guardian shall also be deemed to have given his consent.

"(b) If any such person, having been placed under arrest for manslaughter in the second degree with a motor vehicle or assault in the second degree with a motor vehicle or for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and thereafter, after being apprised of his constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that his license or nonresident operating privilege will be suspended in accordance with the provisions of this section if he refuses to submit to such test or if he submits to such test and the results of such test indicate that at the time of the alleged offense the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight, and that evidence of any such refusal shall be admissible in accordance with subsection (f) of section 14-227a and may be used against him in any criminal prosecution, refuses to submit to the designated test, the test shall not be given; provided, if the person refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test as the test to be taken. The police officer shall make a notation upon the records of the police department that he informed the person that his license or nonresident operating privilege would be suspended if he refused to submit to such test or if he submitted to such test and the results of such test indicated that at the time of the alleged offense the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight.

"(c) If the person arrested refuses to submit to such test or analysis or submits to such test or analysis and the results of such test or analysis indicates that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight, the police officer, acting on behalf of the commissioner of motor

After a hearing conducted pursuant to § 14-227b (f), the commissioner, acting by a designated hearing officer, suspended the plaintiff's nonresident operating

vehicles, shall immediately revoke and take possession of the motor vehicle operator's license or, if such person is a nonresident, suspend the nonresident operating privilege of such person, for a twenty-four-hour period and shall issue a temporary operator's license or nonresident operating privilege to such person valid for the period commencing twenty-four hours after issuance and ending thirty-five days after the date such person received notice of his arrest by the police officer. The police officer shall prepare a written report of the incident and shall mail the report together with a copy of the completed temporary license form, any operator's license taken into possession and a copy of the results of any chemical test or analysis to the department of motor vehicles within three business days. The report shall be made on a form approved by the commissioner of motor vehicles and shall be sworn to under penalty of false statement as provided in section 53a-157 by the police officer before whom such refusal was made or who administered or caused to be administered such test or analysis. If the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for manslaughter in the second degree with a motor vehicle or assault in the second degree with a motor vehicle or for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and shall state that such person had refused to submit to such test or analysis when requested by such police officer to do so or that such person submitted to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight.

"(d) Upon receipt of such report, the commissioner of motor vehicles shall suspend any license or nonresident operating privilege of such person effective as of a date certain, which date shall be not later than thirty-five days after the date such person received notice of his arrest by the police officer. Any person whose license or operating privilege has been suspended in accordance with this subsection shall automatically be entitled to a hearing before the commissioner to be held prior to the effective date of the suspension. The commissioner shall send a suspension notice to such person informing such person that his operator's license or nonresident operating privilege is suspended as of a date certain and that he is entitled to a hearing prior to the effective date of suspension and may schedule such hearing by contacting the department of motor vehicles not later than seven days after the date of mailing of such suspension notice.

"(e) If such person does not contact the department to schedule a hearing, the commissioner shall affirm the suspension contained in the suspen-

privilege for a period of ninety days. In the plaintiff's subsequent appeal from the commissioner's decision to the Superior Court pursuant to General Statutes

sion notice for the appropriate period specified in subsection (h) of this section.

"(f) If such person contacts the department to schedule a hearing, the department shall assign a date, time and place for the hearing, which date shall be prior to the effective date of the suspension. Upon a showing of good cause, the commissioner may grant one continuance for a period not to exceed ten days. If a continuance is granted, the commissioner shall extend the validity of the temporary operator's license or nonresident operating privilege issued pursuant to subsection (c) of this section for a period not to exceed the period of such continuance. The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for manslaughter in the second degree with a motor vehicle or for assault in the second degree with a motor vehicle or for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle. The fees of any witness summoned to appear at the hearing shall be the same as provided by the general statutes for witnesses in criminal cases.

"(g) If, after such hearing, the commissioner finds on any one of the said issues in the negative, the commissioner shall reinstate such license or operating privilege. If, after such hearing, the commissioner does not find on any one of the said issues in the negative or if such person fails to appear at such hearing, the commissioner shall affirm the suspension contained in the suspension notice for the appropriate period specified in subsection (h) of this section. The commissioner shall render a decision at the conclusion of such hearing or send a notice of his decision by certified mail to such person not later than thirty-five days or, if a continuance is granted, not later than forty-five days from the date such person received notice of his arrest by the police officer. The notice of such decision sent by certified mail to the address of such person as shown by the records of the commissioner shall be sufficient notice to such person that his operator's license or nonresident operating privilege is reinstated or suspended, as the case may be. Unless a continuance is granted to such person pursuant to subsection (f) of this section, if the commissioner fails to render a decision within thirty-five days from the date such person received notice of his arrest by the police officer, the commissioner shall reinstate such person's operator's

§ 4-183 (a),[2] she claimed that the record contained insufficient evidence that the arresting officer was certified to administer the breath analysis test, the results of which were admitted into evidence at her administrative hearing. The trial court dismissed the plaintiff's appeal. The Appellate Court affirmed the decision of the trial court. *Schallenkamp* v. *DelPonte*, 29 Conn.

license or nonresident operating privilege, provided notwithstanding such reinstatement the commissioner may render a decision not later than two days thereafter suspending such operator's license or nonresident operating privilege.

"(h) The commissioner shall suspend the operator's license or nonresident operating privilege, and revoke the temporary operator's license or nonresident operating privilege issued pursuant to subsection (c) of this section, of a person who did not contact the department to schedule a hearing, who failed to appear at a hearing or against whom, after a hearing, the commissioner held pursuant to subsection (g) of this section, as of the effective date contained in the suspension notice or the date the commissioner renders his decision, whichever is later, for a period of: (1) (A) Ninety days, if such person submitted to a test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight, or (B) six months if such person refused to submit to such test or analysis, (2) one year if such person has previously had his operator's license or nonresident operating privilege suspended under this section, and (3) two years if such person has two or more times previously had his operator's license or nonresident operating privilege suspended under this section.

"(i) The provisions of this section shall apply with the same effect to the refusal by any person to submit to an additional chemical test as provided in subdivision (5) of subsection (c) of section 14-227a.

"(j) The provisions of this section shall not apply to any person whose physical condition is such that, according to competent medical advice, such test would be inadvisable.

"(k) The state shall pay the reasonable charges of any physician who, at the request of a municipal police department, takes a blood sample for purposes of a test under the provisions of this section.

"(*l*) The commissioner of motor vehicles shall adopt regulations in accordance with chapter 54 to implement the provisions of this section."

[2] "[General Statutes] Sec. 4-183. APPEAL TO SUPERIOR COURT. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

App. 576, 616 A.2d 1157 (1992). We granted certification to appeal, limited to the following question: "Did the Appellate Court properly conclude that there was substantial evidence in the record to support the finding that the arresting officer was certified to administer the breathalyzer tests?" *Schallenkamp* v. *DelPonte*, 224 Conn. 928, 619 A.2d 851 (1993). We affirm the judgment of the Appellate Court.

The plaintiff was arrested in Windsor Locks on October 6, 1990, for operating a motor vehicle while under the influence of alcohol in violation of General Statutes § 14-227a (a).[3] After her arrest, she submitted to a breath analysis test that indicated a blood alcohol content of 0.199 percent, a figure well in excess of the 0.10 percent ratio of alcohol in the blood required for the suspension of her operator's privilege under § 14-227b (f). The arresting officer, Michael Balfore, temporarily suspended the plaintiff's nonresident operating privilege pursuant to § 14-227b (c). Thereafter, Balfore, who had administered the breath analysis test, filed a report with the commissioner, on an approved motor vehicle department form, wherein he noted the results of the test, checked a box that indicated that he was certified to administer the test and swore to the truth of his report.

---

[3] General Statutes § 14-227a provides in relevant part: "OPERATION WHILE UNDER THE INFLUENCE OF LIQUOR OR DRUG OR WHILE IMPAIRED BY LIQUOR. (a) OPERATION WHILE UNDER THE INFLUENCE. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

A subsequent hearing was held, pursuant to § 14-227b (f), to determine whether, pursuant to § 14-227b (g), the plaintiff's nonresident operating privilege should be suspended for a period of ninety days. At the hearing, the motor vehicle department form filed by Balfore was admitted into evidence, over the plaintiff's objection, pursuant to § 14-227b-19 of the Regulations of Connecticut State Agencies.[4] In support of her objection, the plaintiff maintained that Balfore's certification to operate the "Intoximeter 3000," the instrument used to measure the plaintiff's blood alcohol content, had expired prior to the plaintiff's arrest.[5] She contended therefore that the results of the test that Balfore had administered should be given no weight by the hearing officer. She argued in the Appellate Court, and argues in this court, that because of Balfore's lack of certification there was not substantial evi-

---

[4] Section 14-227b-19 of the Regulations of Connecticut State Agencies provides: "ADMISSIBILITY OF POLICE REPORT AT HEARING. The written report filed by the arresting officer shall be admissible into evidence at the hearing if it conforms to the requirements of Section 14-227b (c) of the General Statutes."

[5] Section 14-227b-2 (c) of the Regulations of Connecticut State Agencies provides that "[c]hemical analysis for the purpose of determining the amount of alcohol in the blood of any person shall be performed in accordance with the provisions of Sections 14-227a-1 through 14-227a-10 of the Regulations of Connecticut State Agencies."

Section 14-227a-10 (c) of the Regulations of Connecticut State Agencies provides in relevant part: "No person shall be an operator of a breath analysis instrument unless such person is employed by a law enforcement agency or by the department of health services and is certified by the department of health services. . . .

"(c) CERTIFICATION OF OPERATORS AND INSTRUCTORS. (1) CERTIFICATION OF OPERATORS. (A) In order to be certified as an operator of a breath analysis instrument, a person shall apply to the department for certification and shall: (i) Be employed by a law enforcement agency or by the department of health services; (ii) Successfully complete a minimum of four (4) hours of training in the operation of the instrument to be used. Such training may be acquired by training courses given by the department or by instructors certified by the department for such purposes in accordance with subdivision (3) below; (iii) Demonstrate to the department the proper use and application of the instrument."

dence of the plaintiff's blood alcohol content and, consequently, that it had not been demonstrated that "the ratio of alcohol [in her blood] was ten-hundredths of one per cent or more of alcohol, by weight," an essential element under § 14-227b (f) to permit the commissioner to suspend her operating privilege.

Section 14-227b (f) specifies that a hearing to suspend an operator's license or a nonresident's operating privilege for operating under the influence of intoxicating liquor shall be limited to a determination by the commissioner of the following pertinent issues: "(1) Did the police officer have probable cause to arrest the person for . . . operating a motor vehicle while under the influence of intoxicating liquor . . . (2) was such person placed under arrest; (3) did such person . . . submit to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle." "The language of General Statutes § 14-227b [f] is plain and unambiguous. The hearing is expressly limited to the four issues enumerated above." *Buckley* v. *Muzio,* 200 Conn. 1, 7, 509 A.2d 489 (1986); *Volck* v. *Muzio,* 204 Conn. 507, 512, 529 A.2d 177 (1987). The hearing officer determined that all of the issues specified by the statute had been demonstrated affirmatively and ordered that the plaintiff's nonresident operating privilege be suspended for a period of ninety days.

As in any administrative appeal, the plaintiff bore the burden of proving that the commissioner's decision to suspend her nonresident operating privilege was "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." General Statutes § 4-183 (j) (5); see *Lawrence* v. *Kozlowski,* 171 Conn. 705, 713-14, 372 A.2d 110 (1976), cert. denied,

431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977). "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Citations omitted; internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* 216 Conn. 627, 639–40, 583 A.2d 906 (1990).

There are two difficulties with the plaintiff's position. One relates to the quantum of proof required to overturn an administrative finding of fact. The other relates to our holding in *Volck* v. *Muzio, supra,* 204 Conn. 512, that the governing statutes limit the issues that can be raised in an appeal from a license suspension. The plaintiff can surmount neither of these difficulties.

In support of her claim that Balfore's certification had lapsed, the plaintiff introduced only an unsigned, unsworn "single piece of paper on the letterhead of the department of health services" indicating that Balfore had last been recertified to perform breath analysis tests on September 24, 1989. *Schallenkamp* v. *DelPonte, supra,* 29 Conn. App. 578. Section 14-227a-10 (c) (1) (B) of the Regulations of Connecticut State Agencies provides in part that "[a]n operator's certificate [to administer breath analysis tests] shall be valid for twelve (12) months from the date of issuance." Therefore, if the information submitted by the plaintiff was correct, unless Balfore had been subsequently recertified, his certification to administer breath analysis tests would have expired on September 24, 1990, shortly before the plaintiff was arrested.[6] The countervailing evidence

[6] See § 14-227a-10 (c) (2) of the Regulations of Connecticut State Agencies requiring recertification at the end of a certification period.

consisted of Balfore's sworn report wherein he had represented that "the analytical device [used to test the plaintiff] was operated by a certified analyst." Id.

In reviewing an administrative determination, we "must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." (Citations omitted; internal quotation marks omitted.) *Samperi* v. *Inland Wetlands Agency,* 226 Conn. 579, 588, 628 A.2d 1286 (1993). Moreover, "it is not the function of the trial court, nor of this court, to retry the cause. . . . [T]he determination of issues of fact are matters within its province [of the administrative agency]." (Citations omitted; internal quotation marks omitted.) *Tomlinson* v. *Board of Education,* 226 Conn. 704, 713, 629 A.2d 333 (1993). Because it is the administrative hearing officer's function to determine issues of fact, we cannot say, simply because of the existence of conflicting evidence, that the record failed to contain a substantial basis from which the hearing officer could have concluded that Balfore was certified to administer breath analysis tests on the date of the plaintiff's arrest.

Moreover, even if we were to assume that Balfore's certification had lapsed, such a lapse would not have sufficiently undermined the reliability of the test results to cause us to depart from our holding in *Volck* v. *Muzio,* supra, 204 Conn. 512. In *Volck,* we concluded that even multiple failures on the part of an arresting officer to comply with the statutory dictates of § 14-227b[7] were not sufficient grounds for overturn-

---

[7] The alleged defects in statutory compliance were the officer's failure to warn the plaintiff of the consequences of his failure to submit to testing, the officer's requesting that the plaintiff undergo testing before, rather

ing the commissioner's determination, after a hearing, that the essential elements of the statute had been proven and that the plaintiff's operator's license should be suspended. Id., 518, 521. Similarly, Balfore's alleged failure to comply with a regulation that he currently be certified to administer a breath analysis test would not be a basis for overturning the commissioner's decision in this case as long as there was evidence from which the commissioner reasonably could have concluded that the four prerequisites for suspension set forth in § 14-227b (f) had been demonstrated affirmatively.[8]

The plaintiff maintained at oral argument, however, that § 14-227b-19 of the Regulations of Connecticut State Agencies[9] required Balfore's report to conform with General Statutes § 14-227b (c) in order for the report and the test results to have been admissible at her suspension hearing. She argued that, if Balfore had not been certified at the time she was arrested, his report did not conform to the statute and, consequently, was inadmissible and should not have been considered by the commissioner.

We agree with the plaintiff that the cited regulation mandates Balfore's report to conform to the requirement of § 14-227b (c) in order to have been admissible at the suspension hearing. We do not agree, however, that Balfore had to be certified in order to have his written report conform to the statute. Section 14-227b (c)

---

than after, his arrest, and the officer's failure to have his written report, indicating that the plaintiff had refused testing, endorsed by a third party. See General Statutes § 14-227b (b) and (c); *Volck* v. *Muzio,* supra, 204 Conn. 518.

[8] The absence of certification or the uncertainty of its existence would be a factor that an administrative hearing officer could consider in making a determination whether "such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight." General Statutes § 14-227b (f) (3).

[9] See footnote 4.

sets forth the steps a police officer must take in the preparation and delivery of his report to the commissioner. Nowhere does it mention the certification of the police officer preparing the report or administering the test as a necessary prerequisite to its proper preparation and delivery. The written report required by § 14-227b (c) may therefore conform to the statute and be admissible at an administrative suspension hearing pursuant to § 14-227b-19 even if the officer who prepared and dispatched the report was not currently certified to administer breath analysis tests.

Our construction of § 14-227b (c) is reinforced by a comparison with § 14-227a (c), on which the plaintiff may mistakenly be relying. The latter statute governs the admissibility of the results of a breath analysis test *in criminal proceedings.* For such proceedings, § 14-227a (c) does require that a breath analysis test be administered by an officer "certified or recertified for such purpose . . . by the commissioner of health services" in order for the test results to be admissible in a *criminal trial.* The proceeding in question, however, was an administrative hearing, not a criminal trial, and consequently § 14-227a (c) is inapplicable.

The judgment of the Appellate Court is affirmed.

In this opinion PETERS, C. J., NORCOTT and PALMER, Js., concurred.

KATZ, J., concurring in part and dissenting in part. I disagree with the majority's conclusion that proof of an arresting officer's lack of certification to administer a breath analysis test would not sufficiently undermine the reliability of the test results so as to warrant reversal of a driver's motor vehicle operator's license suspension. In light of our very limited judicial review of administrative agency decisions, however, I agree with the majority's conclusion that under the facts of this

case, the administrative record contains sufficient evidence such that it affords a substantial basis from which the commissioner could have reasonably concluded that the arresting officer was certified to administer the breath analysis test when he arrested the plaintiff. Accordingly, I concur in the result.

In the second part of its opinion, the majority states: "[E]ven if we were to assume that [the arresting officer's] certification had lapsed, such a lapse would not have sufficiently undermined the reliability of the test results to cause us to depart from our holding in *Volck* v. *Muzio,* [204 Conn. 507, 512, 529 A.2d 177 (1987)]." The majority opines that in *Volck* we concluded that the arresting officer's multiple failures to comply with the statutory dictates of General Statutes § 14-227b did not constitute sufficient grounds for overturning the commissioner's determination to suspend an operator's license. Consequently, the majority reasons that in the present case, the arresting officer's alleged failure to comply with § 14-227b-10 (c) of the Regulations of Connecticut State Agencies would not constitute sufficient grounds for overturning the commissioner's decision *"as long as there was evidence from which the commissioner reasonably could have concluded that the four prerequisites for suspension set forth in § 14-227b (f) had been demonstrated affirmatively."* (Emphasis added.) I respectfully suggest that the majority's reliance on *Volck* is misplaced and would hold that, where the administrative record shows that an officer's certification has expired, the commissioner may not reasonably conclude that the four prerequisites for suspension have been demonstrated affirmatively.

In *Volck* v. *Muzio,* supra, 204 Conn. 516, we held that because a § 14-227b (f) hearing is confined to the determination of four issues, the failure to comply precisely with the requirements of § 14-227b (b) and (c) did not preclude the otherwise valid suspension of a driver's

motor vehicle operator's license pursuant to § 14-227b. In *Volck,* the plaintiff driver "appealed to the Superior Court from the suspension of his motor vehicle operator's license by the defendant commissioner [of motor vehicles] pursuant to . . . § 14-227b. The suspension followed the plaintiff's refusal to submit to a blood, breath or urine test for the purpose of determining whether he had been operating a motor vehicle under the influence of intoxicating liquor or drugs. The trial court dismissed [the plaintiff's] appeal despite its finding that the provisions of [§ 14-227b (b) and (c)] pertaining to the refusal to submit to such a test had not been satisfied in two respects: (1) the plaintiff's refusal had occurred before he was placed under arrest; and (2) the police officer's written report of such refusal had not been endorsed by a third person as a witness." Id., 508–10. Additionally, the plaintiff challenged the trial court's finding that the officer had properly informed him of the consequences of refusing to submit to chemical testing. Id., 510. On appeal, the plaintiff asserted that either of these findings precluded his license suspension. Notwithstanding these findings, we affirmed the judgment of the trial court dismissing the appeal. Id.

We concluded that "neither the failure to arrest the plaintiff before his refusal to submit to the prescribed tests . . . nor the failure to have a witness endorse the report of refusal . . . [was] a sufficient ground for overturning the [commissioner's] determination . . . that the plaintiff's motor vehicle operator's license should be suspended pursuant to [§ 14-227b (f)]." Id., 518. In so concluding, we reiterated our holding in *Buckley* v. *Muzio,* 200 Conn. 1, 7, 509 A.2d 489 (1986), that a § 14-227b (f) hearing is expressly limited to the four issues enumerated in that subsection of the statute. Accordingly, we reasoned that any noncompliance with another subsection of § 14-227b that does not

undermine one of those four issues could not affect an otherwise valid suspension of an operator's license. *Volck* v. *Muzio,* supra, 204 Conn. 516. Specifically, we stated that because a § 14-227b (f) hearing is confined to the determination of four issues, "noncompliance with [other sections of the statute], *not involving one of th[ose] four issues* . . . does not preclude the suspension of the license of a driver who refuses to submit to a blood, breath or urine test." (Emphasis added.) Id.

We likewise concluded that a failure to warn the plaintiff of the consequences of his refusal of testing did not constitute a ground for setting aside the order of suspension. We reasoned, in effect, that the arresting officer's failure to warn the plaintiff was irrelevant to the validity of the plaintiff's consent under an implied consent statute. We stated: "When a driver refuses a test to which he is deemed by the statute to have consented, that refusal need not be attended by the kind of warning required in criminal proceedings for a waiver of significant legal rights. The legislature, by limiting the issue at the license suspension hearing to whether a refusal has occurred, has chosen to rely on the presumption that everybody knows the law, including the consequences of breaking it." *Volck* v. *Muzio,* supra, 204 Conn. 520–21.

Thus, in *Volck* we addressed the ramifications of noncompliance with statutory requirements outside § 14-227b (f). Additionally, we addressed the ramifications of a failure to comply with a claimed component of the "refusal" factor that we deemed to be irrelevant to the validity of that factor. We did not, however, directly address the issue in the present case, namely, the implications of a failure to comply with an ingredient crucial to the validity of one of the four issues

contained in § 14-227b (f).[1] For this reason, I believe the majority's reliance on *Volck* is misplaced.

I also fail to see how the four issues under § 14-227b (f) could be affirmatively demonstrated if the arresting officer was not certified. In my view, the officer's lapsed certification would sufficiently undermine the reliability of the plaintiff's test results so as to warrant a reversal of the commissioner's suspension of the plaintiff's motor vehicle operator's license. Subsection (*l*) of § 14-227b directs the commissioner to adopt regulations to implement the provisions of the statute.[2] Accordingly, the commissioner has promulgated § 14-227b-2 (c) of the Regulations of Connecticut State Agencies, which provides that "[c]hemical analysis for the purpose of determining the amount of alcohol in the blood of any person shall be performed in accordance with the provisions of Sections 14-227a-1 through 14-227a-10 of the Regulations of Connecticut State Agencies." Sections 14-227a-1 through 14-227a-10 were promulgated by the department of health services, the agency statutorily charged with governing the opera-

---

[1] In fact, when we decided *Volck* v. *Muzio,* supra, 204 Conn. 507, General Statutes § 14-227b (f) provided in relevant part: "The hearing shall be limited to a determination of the following issues . . . (3) did such person refuse to submit to such test or analysis . . . ." Today, and at all times material to this case, § 14-227b (f) provides in relevant part: "The hearing shall be limited to a determination of the following issues . . . (3) did such person refuse to submit to such test or analysis *or did such person submit to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight.*" (Emphasis added.) Notably therefore, when we decided *Volck,* prong (3) of § 14-227b (f) did not contain the language present today in the statute and relevant to the outcome of this case. I would suggest, therefore, that our holding in *Volck* never meant to encompass the facts of the case before us involving the effect of a lapse of certification on the validity of an otherwise valid suspension.

[2] General Statutes § 14-227b (*l*) provides: "The commissioner of motor vehicles shall adopt regulations . . . to implement the provisions of this section."

tion and use of chemical test devices and the training, certification and annual recertification of operators to ensure reasonable accuracy in testing results.[3] Section 14-227a-10 provides in part: "No person shall be an operator of a breath analysis instrument unless such person is employed by [an] enforcement agency or by the department of health services *and is certified by the department of health services.*" (Emphasis added.) Section 14-227a-10 also sets forth detailed standards and procedures concerning the approval of testing instruments, the methods for conducting breath analysis tests, the certification of operators and instructors, proficiency testing and the recertification of operators and instructors.[4]

---

[3] General Statutes § 14-227a (e) provides: "CERTIFICATION OF METHODS AND TYPES OF CHEMICAL TESTS. The commissioner of health services shall ascertain the reliability of each method and type of device offered for chemical testing purposes of blood, of breath and of urine and certify those methods and types which he finds suitable for use in testing blood, in testing breath and in testing urine in this state. He shall adopt regulations governing the conduct of chemical tests, the operation and use of chemical test devices and the training, certification and annual recertification of operators of such devices as he finds necessary to protect the health and safety of persons who submit to chemical tests and *to insure reasonable accuracy in testing results.*" (Emphasis added.)

[4] Section 14-227a-10 (b) of the Regulations of Connecticut State Agencies provides: "METHODS FOR CONDUCTING BREATH ANALYSIS TESTS. Any operator who conducts a breath analysis test shall utilize the following procedures: (1) SAMPLE COLLECTION. (A) The expired breath sample shall be air which is alveolar in composition. The breath sample shall be collected only after the subject has been under continuous observation for at least fifteen minutes prior to the collection of each sample. During this observation period the subject must not have ingested any alcoholic beverages or food, or regurgitated, or smoked. (B) Sample(s) of the persons breath shall be collected with an instrument approved for this purpose by the department in accordance with subsection (a).

"(2) OPERATION OF INSTRUMENT. (A) The manufacturer's operational instructions shall be followed by operators and shall be available at each instrument location. (B) All police agencies are to have their breath analyses instruments made available for examination by the department of health services. A single current log book for the instrument shall be maintained in which the frequency of determination of accuracy of the instru-

The majority concedes that "[t]he absence of certification or the uncertainty of its existence would be a factor that an administrative hearing officer could consider in making a determination [under § 14-227b (f) (3) of] whether 'such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight.' " Nevertheless, in view of its conclusion, the majority grants very little, if any, weight to that factor. Under the majority's analysis, complete disregard for the detailed certification standards and procedures promulgated by the department of health services may be inconsequential to the validity of the results of a breath analysis test. In contrast, I believe that the detailed regulatory procedures for certification requiring that the operator of a breath

ment and the identity of the person performing the determination of such accuracy are given. Breath analyses instruments shall be examined and certified by the department prior to being placed in operation and after being repaired or recalibrated. All test results of each subject's analysis and calibration shall be recorded in the log book maintained by the police agency. This log book shall be made available for examination by the department."

Section 14-227a-10 (c) of the Regulations of Connecticut State Agencies provides in part: "CERTIFICATION OF OPERATORS AND INSTRUCTORS. (1) CERTIFICATION OF OPERATORS. (A) In order to be certified as an operator of a breath analysis instrument, a person shall apply to the department for certification and shall: (i) Be employed by a law enforcement agency or by the department of health services; (ii) Successfully complete a minimum of four (4) hours of training in the operation of the instrument to be used. Such training may be acquired by training courses given by the department or by instructors certified by the department for such purposes in accordance with subdivision (3) below; (iii) Demonstrate to the department the proper use and application of the instrument.

"(B) An operator's certificate shall be valid for twelve (12) months from the date of issuance. The certificate is valid only while the operator is with the particular law enforcement agency for which certification was originally issued.

"(C) Proficiency testing. In order to maintain an operator's certificate, an operator may be required to satisfactorily analyze proficiency test samples provided by the department by using approved direct breath test instruments at periodic intervals."

analysis instrument be trained and certified in its oper-
ation directly promote and sustain the underlying valid-
ity and reliability of breath analysis test results. Thus,
in contrast to the majority, I believe that in the absence
of proof of the arresting officer's certification, the
administrative record does not afford a substantial basis
from which the commissioner could have reasonably
concluded that the third prong set forth in § 14-227b (f)
had been demonstrated affirmatively.

In this case, because I agree with the majority that
the administrative record afforded a substantial basis
from which the commissioner could have reasonably
concluded that the arresting officer was certified, I con-
cur in the result. Although the plaintiff introduced a
copy of a document on the letterhead of the department
of health services indicating that the arresting officer's
certification was due to expire before he arrested the
plaintiff, the document was unsworn and unsigned. The
countervailing evidence consisted of the arresting offi-
cer's sworn report stating that he was certified when
he administered the breath analysis test to the plain-
tiff. As a reviewing court, we must defer to the com-
missioner's "assessment of the credibility of the
witnesses and to [the commissioner's] right to believe
or disbelieve the evidence presented by any witness
. . . in whole or in part . . . ." (Internal quotation
marks omitted.) *Connecticut Building Wrecking Co.* v.
*Carothers,* 218 Conn. 580, 593, 590 A.2d 447 (1991).
Additionally, the commissioner is not "required to use
in any particular fashion any of the materials presented
to it so long as the conduct of the hearing is fundamen-
tally fair. *Miklus* v. *Zoning Board of Appeals,* 154 Conn.
399, 225 A.2d 637 (1967)." *Manor Development Corp.*
v. *Conservation Commission,* 180 Conn. 692, 697, 433
A.2d 999 (1980). Under these limiting principles, I agree
with the majority that substantial evidence existed in

the administrative record, notwithstanding the contrary evidence presented by the plaintiff, that would reasonably support the conclusion that the arresting officer was certified.

I respectfully concur.