[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Cherie Monsonis appeals the decision of the defendant Commissioner of Motor Vehicles ("Commissioner") suspending her motor vehicle operator's license. Acting pursuant to General Statutes § 14-227b, the commissioner suspended the plaintiff's license on the basis that she failed a chemical test of the alcohol content of her blood after having been arrested on the charge of driving while under the influence of alcohol. The plaintiff appeals under General Statutes § 4-183. The court finds the issues in favor of the defendant.
The following facts are reflected in the record. On May 15, 1997, at approximately 10:40 p. m., Connecticut State Police Troop H received a 911 call that a gold Nissan Maxima automobile was traveling eastbound on Interstate 84 in Hartford in an erratic manner. Some ten minutes later, Trooper Mark Lamberty responded and observed a Nissan Maxima in the center lane of I-84, weaving among all three lanes. The trooper activated his cruiser lights and siren and pulled the vehicle off onto the Exit 48 ramp. When he approached the plaintiff, he noted she had red and bloodshot eyes. The plaintiff spoke to him with slurred speech. Trooper Lamberty smelled an odor of alcohol on her breath. The plaintiff told him she had consumed one drink. She agreed to perform the field sobriety tests and performed them poorly. CT Page 10785
Trooper Lamberty placed the plaintiff under arrest for violating General Statutes § 14-227a. advised her of the Miranda warnings and provided the implied consent advisory, including her right to consult an attorney. The plaintiff agreed to submit to a chemical alcohol breath test. The first test was administered at 11:16 p. m. with a result of .136 BAC; the second test was administered at 11:51 p. m. with a result of .115 BAC.
As a consequence, the plaintiff received a suspension notice suspending her license effective June 14, 1997 for a period of one year[1]. After several hearing dates were scheduled, the hearing took place on July 15, 1997. The plaintiff was represented by counsel at the hearing and presented testimony in the person of James O'Brien, an expert in the field of toxicology. The only other evidence before the hearing officer was the police report and A-44, which were admitted without objection from the plaintiff.
On July 15, 1997, pursuant to § 14-227b(g), the hearing officer rendered a decision suspending the plaintiff's license for one year. The plaintiff appealed, claiming that the hearing officer improperly disregarded the only expert testimony and that the plaintiff's expert rebutted the statutory presumption of General Statutes § 14-227b(f).
In an administrative appeal, it is the plaintiff's burden to prove that the commissioner's decision to suspend a motor vehicle operating privilege was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.Schallenkamp v. DelPonte, 229 Conn. 31, 39 (1994). "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." Internal quotation marks omitted.) Id., 40. If there is substantial evidence in the administrative record to provide the hearing officer a reasonable basis for his finding, the decision must be upheld. Connecticut Building Wrecking Co. v. Carothers,218 Conn. 580, 601 (1991). "The obvious corollary to the substantial evidence rule is that a court may not affirm a decision if the evidence in the record does not support it." Bialowas v.CT Page 10786Commissioner of Motor Vehicles, 44 Conn. App. 702, 709 (1997).
In a license suspension hearing pursuant to § 14-227b, the hearing officer is limited in his determination to the four issues designated in subsection (f) of that statute: probable cause, arrest, results of testing and operation of a motor vehicle. Volck v. Muzio, 204 Conn. 507, 515-16 (1987). Here, it is the determination of the third issue that the plaintiff contests. That determination rests in part upon further provisions of § 14-227b (f) that read
 In the hearing, the results of the test or analysis shall be sufficient to indicate the ratio of alcohol in the blood of such person at the time of operation, except that if the results of the additional test indicate that the ratio of alcohol in the blood of such person is twelve-hundredths of one per cent or less of alcohol, by weight, and is higher than the results of the first test, evidence shall be presented that demonstrates that the test results and analysis thereof accurately indicate the blood alcohol content at the time of operation.
(Emphasis added)
At the hearing, Dr. O'Brien testified as follows on direct examination:
 Q. Dr. O'Brien, based on your background and recognized expertise, do you have an opinion as to the reliability of the test results which were a .136 and .115?
A. Yes, sir.
Q. What is that opinion please?
A. They are not reliable.
 Q. And would you please advise the hearing officer as to the basis of your opinion?
 A. The stop was 22:49. According to the report she had stopped drinking at 19:30. One Intoxilyzer result taken at 23:14 was .136, the second one CT Page 10787 taken 37 minutes later at 23:51 was .115. This would be a decrease of .021 which would result actually in a decrease in her alcohol level if we look at .021 which would be equivalent to .034 per hour. This is extremely high and lies outside the realm of medical probability. So based on that extreme drop, the only way I can explain it is that one or both of the Intoxilyzer results are incorrect.
 Q. Is it fair to say doctor that these results are highly improbable?
 A. Yes, highly improbable. The results were also double the normal metabolic rate. Point zero one eight would be a normal decrease for an average person in an hour. This is .034 per hour. I have no explanation for that, outside one or both of the results are incorrect.
(ROR, July 15, 1997 tr. pp. 4-5.)
The hearing officer then examined Dr. O'Brien as follows:
 Q. Dr. O'Brien, were you present when Ms. Monsonis-Dumas was tested?
A. No, I was not.
 Q. Did you have an opportunity to examine the Intoxilyzer?
 A. Yes, all of the calibrations were okay and everything.
 Q. Did you have an opportunity to examine that Intoxilyzer itself?
A. Oh, the machine itself. no, sir.
 Q. But your review of the printout tapes, did you have a chance to review those?
 A. I reviewed those and the blank and the calibrations and everything looked fine. It's CT Page 10788 (inaudible) decreases, double the metabolic rate — it's hard to explain.
 Q. You not that it's hard to explain or that it's improbable —
A. It's highly improbable.
Q. But not impossible?
 A. It's not impossible beyond any reasonable medical probability.
(ROR, July 15, 1997 tr. pp. 5-6).
The hearing officer set forth his subordinate findings supporting his ultimate findings.
 Dr. O'Brien's testimony dealt in probabilities only. He conceded that the intoxilyzer appeared to function. This case falls within the 2-hour presumption.
(ROR, Decision dated July 15, 1997).
The plaintiff specifically argues that because she produced substantial evidence in the person of Dr. O'Brien to rebut the statutory presumption of § 14-227b (f), the hearing officer had to produce additional evidence and was not free to disregard the plaintiff's expert. The plaintiff refers to Dr. O'Brien's testimony "that one could not determine with a reasonable degree of scientific certainty that the plaintiff's BAC was equal to or greater than .10 or higher." (Plaintiff's Brief p. 4). The court has reviewed the transcript and finds no such testimony.
In Ramisk v. Commissioner of Motor Vehicles, Superior Court, judicial district of Hartford/New Britain at Hartford, Doc. No. 558492, p. 4, July 11, 1996, affirmed, 45 Conn. App. 924
(per curiam), cert denied, 243 Conn. 923 (1997), Judge Maloney relied upon State v. Korhn, 41 Conn. App. 874 (1996) and Statev. Nokes, 42 Conn. App. 10 (1996), to find that
 a hearing officer may rely on the presumption created by the statute if he or she disbelieves expert evidence to the contrary. Additional expert CT Page 10789 evidence to rebut the plaintiff's evidence is not required in such a case.
Here, while it is not clear that the hearing officer disbelieved the expert's testimony, it is clear that Dr. O'Brien's testimony did not defeat the presumption. He testified that the intoxilyzer was functioning properly and did not testify to any facts that would defeat the statutory presumption that the plaintiff was intoxicated while she operated her automobile. While Dr. O'Brien found the difference between the two test results highly improbable, he did not testify to any facts that the plaintiff's BAC was not over .10 at the time of the first test. In fact, both results were over .10 BAC. An opinion that the sequence of the two results, .136 to .115, is highly improbable does not challenge the predicate facts of the statutory presumption. The finding of the hearing officer that the test was administered within two hours of operation is not in dispute. See Jarvis v. Commissioner of Motor Vehicles, Superior Court, judicial district of Hartford/New Britain at Hartford, Doc. No. 558578 (November 8, 1996) (Maloney, J.). Accordingly, the hearing officer properly relied on the statutory presumption to infer that the plaintiff's alcohol level exceeded the legal limit at the time she operated the vehicle.
The appeal is dismissed.
DiPentima, J.