[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 15950
The plaintiff, Torrington Education Association ("Association"), appeals from a decision of the defendant, State Board of Labor Relations ("Labor Board"), which dismissed its complaint against the Torrington Board of Education ("School Board") alleging a prohibited labor practice that the School Board violated the Teacher Negotiation Act (Section 10-153a
et seq.) by unilaterally subcontracting to a regional educational service center to provide an educational program for middle and high school students with behavioral problems. The issue on appeal, as stated by the Association in its brief, is "whether [the Labor Board] erred in deciding the subcontracting in question is consistent with established practice."
The facts are as follows. The plaintiff Association is an employee organization within the meaning of Connecticut General Statutes §10-153b(2) and at all times has exclusively represented Torrington teachers. The defendant School Board is an employer within the meaning of the Teacher Negotiation Act § 10-153a et seq. and specifically prohibited under § 10-153e(b)(4) from "refusing to negotiate in good faith with the employees bargaining agent or representative . . ." The intervenor Education Connection is a regional educational service center, established in accordance with § 10-66a and authorized to provide programs for member school districts for out-placement of special education students, disabled students, gifted and talented students, and other exceptional students. Thirty-one school districts in Litchfield County are members of Education Connection, including the Town of Torrington. Basically Education Connection operates a program known as Gateways Alternative Education School for students that come from troubled homes, skip classes, have a high absentee rate, are involved with the law, are disruptive to other students, and have been expelled from school.
On June 4, 1997, the School Board passed a motion to contract with Education Connection to operate an alternative program in the 1997-98 school year for middle and high school students. The Association orally requested, through the superintendent of schools, that the School Board negotiate over its decision to operate such a program at Education Connection. The Association met with the superintendent, the chairman of the School Board, and the Board's negotiation committee to discuss the Association's request. The superintendent informed the Association that the School Board would not negotiate over the decision. On September 8, 1997, the School Board voted to approve a contract for the Education Connection to "operate a quality alternative school for twenty-five high school and fifteen middle school students." This program is known as Gateways Alternative Education School. CT Page 15951
On November 7, 1997, the Association filed a complaint with the Labor Board alleging that the School Board had violated the Teacher Negotiation Act by unilaterally subcontracting bargaining unit work. The matter came before the Labor Board for a hearing on January 7, 1999. At the hearing the Labor Board granted Education Connection's motion to intervene. The parties appeared, were represented by counsel and allowed full opportunity to present evidence, examine and cross examine witnesses and make an argument. On September 2, 1999 the Labor Board issued a decision dismissing the Association's complaint on the ground that the Association failed to prove that subcontracting the work in question departed significantly from the School Board's established practice of subcontracting certain types of bargaining unit work.
The parties agree that the decision of the Labor Board before this court is governed by the standards enunciated in the Board's City of NewBritain Decision No. 3290 (1995). In that decision, the Labor Board determined that a complainant must establish all of the following in order to prove a prima facie case of unlawful subcontracting or transferring of bargaining unit work: (1) the work in question is bargaining unit work; (2) the subcontracting or transfer work varies significantly in kind or degree from what is customary under past established practice; and (3) the subcontracting or transfer of work has a demonstrable, adverse impact on the bargaining unit. The Labor Board here determined that the work in question was bargain unit work, that it did not differ significantly in kind or degree from what was customary under past practices, and it was unnecessary to decide the third prong of the City of New Britain decision as to whether or not subcontracted work had a demonstrable adverse impact on the bargaining unit.
The standard of review of the appeal of an administrative decision is very narrow in scope. Section 4-183(j) of the Uniform Administrative Procedures Act provides; "The court shall not substitute its own judgment for that of the agency as to the weight of the evidence on questions of fact. . . ." Furthermore, as provided in § 31-109b, relating specifically to appeals from Labor Board decisions, "The findings of the Board as to facts, if supported by substantial evidence, shall be conclusive." The plaintiff bears the burden of proving that the Labor Board's decision is not supported by substantial evidence. Schallenkampv. DelPonte, 229 Conn. 31, 39 (1994). Decisions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically flow from such facts. Finkelstein v.Administrator, 192 Conn. 104, 112-113 (1984).
As stated above, the central question here is whether the Labor Board CT Page 15952 erred in deciding that the subcontracting in question is consistent with established past practices.
The Labor Board found, "The School Board has historically subcontracted for programs and services, many of which are capable of being provided by the Torrington school system or currently being provided within the school system to one degree or another." Typically, it noted, students are out-placed in the Greater Hartford Arts Academy in spite of the fact that art programs are offered within the Torrington system. The Labor Board further found that the School Board utilizes subcontracted providers for such services as counseling and speech therapy, in spite of the fact that such services are also provided by the bargaining unit. Moreover, special education students are also regularly placed outside the Torrington system, depending on their needs, despite the fact that special education services are also provided by the bargaining unit. One of these special education programs is known as Polaris which is run by the Capitol Regional Education Council. Certain Torrington students also attend the vocational agricultural programs at Wamogo and Region 7 schools.
The Labor Board concluded "We do not agree with the Association that the Gateway program is significantly different from any of the programs described above. Each constitutes a program or service provided by non-bargaining unit personnel which fulfills an educational need for special students. This is the same function that Gateway performs."
The Association argues that the School Board's contracting for an entire alternative school program is vastly different from any past subcontracting by the Board. However, there is no indication in this record that every child labeled as "troubled" will be taught by Education Connection. Because the alternative program is optional for most students, some troubled students will continue to be educated within the system. The Labor Board noted that although a limited number of students will be taught outside the Torrington system, this is not inconsistent with the practice of having groups of special students educated in special areas by non-bargaining unit personnel.
The Association argues that because special education is governed by the federal Individuals With Disabilities Education Act, (20 U.S.C. § 1400, et seq.) decisions made about special education programs are outside the scope of collective bargaining and thus are not an appropriate comparison. However, in spite of the fact that an impartial hearing officer under that federal act may decide that public school has no choice but to provide a particular program for a special education student, there is still great leeway for the school board to decide if the program will be provided within or without the system. Thus, the CT Page 15953 School Board in this case could properly decide that the past practice of out-placing the special education students is consistent with the program to place such children with the Education Connection.
In City of New Britain, Decision No. 3290 the Labor Board comprehensively reviewed its prior decisions involving the removal of work from a bargaining unit as the basis for a prohibited labor practice within the meaning of § 10-153e(b)(4). Based on that analysis, it arrived at the three factors listed above for determining if an employer has unlawfully assigned bargaining unit work to non-bargaining unit personnel without bargaining with the union. As for the second factor relating to whether or not the subcontracting/transfer of work varied significantly in kind or degree from what had been customary or past practice, the Board in City of New Britain, at p. 36, stated:
 Under this factor, we will look at the history of subcontracting/transfer of work including the type and amount of work performed previously by non-union personnel and compare this historical information to the current action. We will also consider the `category' of non-bargaining union personnel who have previously performed bargaining unit work. In this regard we will consider the important facts that show that an employer's action differs from past practice because the personnel to whom the work is to be assigned are of a different type than those to whom the work was previously assigned.
Thus, the Board's analysis of this second factor is based upon a comparison between past practice and the action that is the subject of the case before it, and is primarily a question of fact. It is clear that the Labor Board here carefully considered all the record evidence and concluded that the subcontracting of education of disturbed children to the Education Connection did not vary significantly from past established practice. Its decision is replete with examples of special programs and services being offered outside the Torrington system for a variety of special students.
This court concludes the Board's decision is supported by substantial evidence. Persico v. Maher, 191 Conn. 384, 409 (1983). As a consequence, this appeal is dismissed.
Robert Satter Judge Trial Referee