[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
This administrative appeal from a decision of the defendant bureau of rehabilitation services ("bureau") in the department of social services comes to the court on remand from the Supreme Court. See Toise v. Rowe,243 Conn. 623, 707 A.2d 25 (1998). The Supreme Court reversed the Appellate Court's decision affirming the trial court's original ruling that there was no "contested case" under the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., and that the court therefore lacked subject matter jurisdiction. The Supreme Court held that Public Acts 1995, No. 95-355 retroactively conferred subject matter jurisdiction on the court and remanded the case for consideration of the merits. See General Statutes § 17b-654. At issue on the merits is whether the bureau properly denied the application of the plaintiff, who has learning disabilities, for funding from the bureau for the plaintiffs final semester in a master's degree program at Yale University School of Public Health and for the provision of other vocational skill development and support services.[1]
The plaintiff first applied to the bureau for assistance in August, 1990. By that time, the plaintiff had completed two semesters of study in the master's program at Yale. The plaintiffs plan at that time was to complete her course work in May, 1991, and her thesis in September, 1991. The bureau found the plaintiff eligible to apply for services on December 10, 1990, but the plaintiff had no contact with the bureau from December 28, 1990 to March 4, 1991. On April 3, 1991, the plaintiff informed bureau staff that she had taken out $50,000 in student loans to pay for her Yale education. (Return of Record ("ROR"), Vol. I, pp. 7-8 ¶¶ 1, 2, 5, 7, 10.)[2]
On May 10, 1991, the plaintiff and a counselor from the bureau agreed upon an Individualized Written Rehabilitation Program ("IWRP") that stated the plaintiffs vocational goal to be "public health worker" and, as intermediate objectives: "`1. to obtain Master's in Public Health through CT Page 11045 Yale University,' to be funded by `student loans,' and `2. To determine the appropriateness of computer purchase,' to be funded by `DRS.'" The IWRP also contained the following notation:
 Due to a spending freeze, any services listed in this planned program that could result in a cost to the Agency are tentative and will require review when funding becomes available. This will be done jointly to determine that the vocational goal and the services indicated are still appropriate and necessary.
The plaintiff signed the IWRP on June 10, 1991 after the following statement: "`I have participated in the development of this program. I understand it and accept it." (ROR, Vol. I, pp. 8-9 ¶¶ 14, 15, 18.)
In November, 1991, the plaintiff received a master's in public health from Yale with distinction and with a concentration in international and preventive health. In late 1991 and early 1992, the plaintiff received a computer and peripheral equipment through the bureau. The plaintiff received tutoring in Spanish and Spanish books in early 1992. (ROR, Vol. I, p. 9 ¶¶ 21, 22, 25.)
The plaintiff requested additional job placement assistance through the filing of amended IWRPs. (ROR, Vol. II, pp. 319-25.) An administrative review of the plaintiffs requests resulted in the granting of some additional career placement assistance, the denial of further vocational services, and the denial of tuition reimbursement. Upon further review, a fair hearing officer upheld the denial of further vocational services, but recommended that the bureau pay the plaintiff $1,737.00 in tuition assistance for the spring semester of 1991. (ROR, Vol. I, pp. 11-12 ¶¶ 30-38; pp. 29-30.) In the bureau's final decision, the director of the bureau upheld the fair hearing officer's decision that the plaintiff was not entitled to state funding for the various other vocational programs, but overturned the hearing officer's conclusion that the plaintiff was entitled to tuition assistance. (ROR, Vol. I, pp. 1-5.) The director concluded that "[a] Hearing Officer may not retroactively order a compensatory payment for a service in the absence of a mutually agreed Individual Written Rehabilitation Plan without violating federal and state law." (ROR, Vol. I, p. 2 ¶ 7.)
On appeal, the plaintiff must overcome the fact her IWRP never identified state assistance as the source of funding for the Yale master's degree program. Instead, the plaintiff stated that she would pay for Yale with "student loans." This request stands in contrast to her request for the purchase of a computer with funding from "DRS."[3] The CT Page 11046 plaintiff explicitly acknowledged that she understood and accepted this IWRP.
At the time of the final decision in this case, the federal Rehabilitation Act, 29 U.S.C. § 701 et seq., which applied and continues to apply to the bureau pursuant to General Statutes § 17b-653
(a) and predecessor statutes, provided that "an individualized written rehabilitation program is jointly developed [and] agreed upon. . . ."29 U.S.C. § 722 (b)(1)(1)(A)(i) (1994). Similarly, the bureau's regulations provided: "The Individualized Written Rehabilitation Program shall be developed jointly by the appropriate representative of the Division and the client with a disability or, as appropriate, his or her parent, guardian or other representative." Regs., Conn. State Agencies § 10-102-10 (b). State regulations also provided that "[f]inancial participation by the [bureau] in providing training in institutions of higher education or vocational training facilities shall be made only in accordance with an appropriately completed Individualized Written Rehabilitation Program." Regs., Conn. State Agencies § 10-102-15 (b) (ROR, Vol. I, pp. 31-41)[4] Because these authorities are clear that the agency can only provide funding for services, and particularly higher education, in accordance with an IWRP that the bureau and the plaintiff jointly develop and agree upon, and because the IWRP in this case reveals that there was no agreement that the bureau would provide funds for the plaintiffs Yale tuition, the plaintiff lacked an essential ingredient to obtaining tuition assistance from the bureau.
The plaintiff argues that she was not advised of her right to seek tuition assistance and therefore she did not request it. The hearing officer did find that the bureau failed in its duty to advise the plaintiff that, under some circumstances, the bureau will provide post-secondary tuition assistance. (ROR, Vol. I, p. 18.)[5] It is not clear, however, why the plaintiff a Yale graduate student who requested a multiplicity of services from the bureau, did not think to request tuition assistance on her own. The plaintiffs need was not a unique disability-related service but rather the same sort of financial aid that virtually every graduate student needs.
In any case, even if the bureau had advised the plaintiff of the availability of state tuition assistance, the bureau would not have had authority to include such assistance in the IWRP signed in June, 1991. In this case, the plaintiff sought written authorization, in the form of the IWRP, after she had completed most of her studies at Yale, rather than before or contemporaneously with her matriculation. The hearing officer found that the plaintiff was entitled to tuition assistance for the 1991 spring semester without finding or suggesting that, by June, 1991, the CT Page 11047 plaintiff had not fully paid her tuition to Yale, whether by student loans or otherwise. (ROR, Vol. I, p. 29.) Thus, by June, 1991, the plaintiff sought only reimbursement for services already purchased. Under governing federal regulations, however, a state rehabilitation plan must provide that "written authorization is made, either before or at the same time as the purchase of services." 34 C.F.R. § 361.44 (1994). The bureau's policy manual similarly provided that "[t]he counselor's supervisor must approve the IWRP prior to the initiation of services." (ROR, Vol. III, p. 771 ¶ 5.) The plaintiff cites no authority that supercedes or interprets the federal regulation to allow for the reimbursement of tuition other than "before or at the same time as the purchase of services." 34 C.F.R. § 361.44 (1994).[6] The bureau correctly determined that the law did not require it to reimburse students who have already paid for graduate school by arranging their own financing.
The second part of the plaintiffs appeal challenges the bureau's denial of funding for a variety of services including additional tutoring in French and Spanish, video production training, a "Lifespring" workshop, the "Train the Trainer" program, and a Dale Carnegie course. Under governing federal law, state vocational rehabilitation programs must provide "any goods and services necessary to render an individual with a disability employable. . . ." (Emphasis added.) 29 U.S.C. § 723 (a) (1994). The record establishes that the bureau could reasonably have concluded that the items requested by the plaintiff were extravagances that were not necessary for the plaintiffs employment. Accordingly, the plaintiff cannot prevail on this issue. See Schallenkamp v. DelPonte,229 Conn. 31, 40, 639 A.2d 1018 (1994).
The plaintiff having failed to sustain the grounds for her appeal, the appeal is dismissed.
Carl J. Schuman Judge, Superior Court