[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case, the plaintiff, Robert E. Yarington, appeals a decision of the defendant, the Commissioner of the Department of Motor Vehicles, revoking his motor vehicle operator's license. The Commissioner acted pursuant to the administrative license suspension provisions of General Statutes § 14-227b on the basis that the plaintiff refused to consent to chemical analysis of his blood. The plaintiff appeals the suspension pursuant to General Statutes § 4-183.
The issues presented to the court are the following:
Did the Commissioner properly suspend the plaintiff's drivers license after his arrest by the Wolcott Police for driving under the influence of liquor where the stop and arrest occurred in Waterbury?
Was the plaintiff's drivers license properly suspended for one year given the fact that his driving record was not part of the administrative record?
The Commissioner's decision was mailed on March 10, 1995. (Return of Record [ROR], Item 5.) The appeal was filed with the clerk of the Superior Court on April 4, 1995. On April 5, 1995, the plaintiff served the Commissioner by leaving the appeal CT Page 59 papers at the Department of Motor Vehicles in Wethersfield. On April 7, 1995, the plaintiff left copies of the appeal papers at the Attorney General's office in Hartford.
The Commissioner filed an answer and return of record.[1]
The parties each filed briefs. The appeal was heard by the court on September 15, 1995.
The record of the administrative proceeding discloses the following facts. On February 18, 1995, at approximately 2:00 a.m., the plaintiff, Robert E. Yarington, was operating a motor vehicle on Meriden Road in Wolcott, Connecticut (ROR, Item 3). At this time, he was observed not wearing a seat belt by officers of the Wolcott Police Department (ROR, Item 3). The officers followed the plaintiff for approximately .25 miles and stopped him at the corner of Meriden and Pierpont Roads in the City of Waterbury for this infraction (ROR, Item 2). The officers approached the plaintiff's vehicle and noticed a strong odor of alcohol on his breath (ROR, Item 3). The officers also observed that the plaintiff's eyes were red and glassy and that his speech was slurred (ROR, Item 3). When asked to produce his drivers license, registration and insurance card, the officers observed that the plaintiff was "fumbling around" and "displayed poor motor skills" (ROR, Item 3).
Based upon these observations, the officers asked the plaintiff to exit his vehicle so that they could perform field sobriety tests (ROR, Item 3). The plaintiff refused to perform the tests and was placed under arrest for driving under the influence of liquor (ROR, Item 3). The plaintiff was then transported to the Wolcott Police Department and was informed of his implied consent to submit to a blood alcohol test (ROR, Item 3). The plaintiff refused to perform the test and was issued a temporary license and summons for driving under the influence (ROR, Item 3). The plaintiff was then released on a written promise to appear (ROR, Item 3).
On March 9, 1995, an administrative license suspension hearing was held pursuant to General Statutes § 14-227b(f) before Hearing Officer Jeffrey Donahue (ROR, Item 2). AS a result of this hearing, Officer Donahue made the following findings of fact and conclusions of law:
 1. The police officers had probable cause to arrest the plaintiff for operating while under the influence CT Page 60 of an intoxicating liquor;
2. The plaintiff was placed under arrest;
 3. The plaintiff refused to submit to a blood test or analysis;
4. The plaintiff was operating the motor vehicle.
(ROR, Item, 5). Based upon these findings, the Commissioner suspended the plaintiff's drivers license for one year (ROR, Item 5).
As part of his appeal, the plaintiff has also attached a copy of the transcript of the criminal proceedings arising from this incident. The transcript reveals the following facts. On March, 17, 1995, the state sought to nolle the charges against the plaintiff due to its belief that probable cause could not be established. The defendant then sought a dismissal of the charges and the state did not object. The court, Grogins, J., then dismissed the charges. It is important to note, however, that this transcript is not part of the administrative record.
Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. Schallenkamp v. DelPonte, 29 Conn. App. 576,580-81, 616 A.2d 1157 (1992), aff'd, 229 Conn. 31
(1994). Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. Lawrence v.Kozlowski, 171 Conn. 705, 708, 372 A.2d 110, cert. denied,431 U.S. 969 (1976).
The scope of review is very limited, and the court may not retry the case or substitute its own judgment for that of the Commissioner. Buckley v. Muzio, 200 Conn. 1, 3, 509 A.2d 489
(1986), citing C H Enterprises. Inc. v. Commissioner of MotorVehicles, 176 Conn. 11, 12, 404 A.2d 864 (1978). The court's ultimate duty is only to decide whether, in light of the evidence, the commissioner has acted unreasonably, arbitrarily, illegally, or in abuse of his discretion. Buckley v. Muzio,
CT Page 61 supra, 203 Conn. 3. In order to prevail in an appeal from a driver's license suspension, the plaintiff bears the burden of proving that substantial rights possessed by him have been prejudiced because the decision to suspend his right to operate a motor vehicle in this state was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Schallenkamp v. DelPonte, supra, 29 Conn. App. 580.
General Statutes § 14-227b imposes administrative sanctions for refusal to take a breath, blood or urine test by an operator who has been arrested for driving while under the influence of an intoxicating liquor. General Statutes § 14-227b(a) provides that "any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine. . . ." Subsection (c) provides that refusal to submit to such analysis shall result in the suspension of a person's motor vehicle operator's license. A person whose license is suspended is accorded a hearing, which is limited to a determination of the following issues:
 (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis; and (4) was such person operating the motor vehicle.
General Statutes § 14-227b(f); "In the context of a license suspension under the implied consent law, if the administrative determination of the four license suspension issues set forth in § 14-227b(f) is supported by substantial evidence in the record, that determination must be sustained." Schallenkamp v.DelPonte, supra, 29 Conn. App. 581; Volck v. Muzio, supra,204 Conn. 511.
The plaintiff advances two arguments in its memorandum in support: (1) The officers lacked probable cause to stop and arrest the plaintiff; and (2) The one year suspension was improper because the plaintiff's driving history was not part of the administrative record. In order to illustrate the issues raised by the plaintiff's appeal, I shall address each of these arguments separately. CT Page 62
The plaintiff's probable cause argument attacks both the legality of the initial stop of his vehicle by the police as well as the officer's subsequent determination of probable cause to arrest him.
The plaintiff first argues that the initial stop was unlawful because the officers had no authority to stop him outside of their jurisdiction for a motor vehicle infraction. Based upon this premise, the plaintiff further argues that his subsequent arrest was unlawful and, therefore, cannot support a license suspension. The Commissioner counters that the stop was a valid exercise of the extra-territorial jurisdiction of the Wolcott Police Department.
Under Connecticut law, operators of motor vehicles are required to wear seat belts. The Connecticut "Seat Belt" statute, General Statutes § 14-100a(c), provides in pertinent part that "[t]he operator of and any front seat passenger in a private passenger motor vehicle . . . shall wear such seat safety belt while the vehicle is being operated on the highways of this state . . ." At the same time, it is also clear that "[a] police officer has the right to stop a motor vehicle operating on a Connecticut highway even if the reason for thestop is only an infraction under our traffic laws." (Emphasis added.) State v. Dukes, 209 Conn. 98, 547 A.2d 10 (1988).
The authority of a municipal police officer to arrest is usually limited to geographical boundaries of the municipality that appointed the officer. General Statutes §§ 7-148(c)(4)(A) and 54-1f(a), See State v. Kuskowski, 200 Conn. 82, 86,510 A.2d 172 (1986). General Statutes § 54-1, however, grants extra jurisdictional authority to local police departments under limited circumstances and provides in pertinent part:
 (c) Members of any local police department . . . when in immediate pursuit of one who may be arrested under the provisions of this section, are authorized to pursue the offender outside of their respective precincts into any part of the state in order to effect the arrest.
In State v. Harrison, 228 Conn. 758, 638 A.2d 601 (1994), the Connecticut Supreme Court addressed the issue of whether driving under the influence of liquor, in violation of General CT Page 63 Statutes § 14-227a, is an offense within the meaning of 54-1f. In this case, a Branford police officer pursued a drunk driving suspect into East Haven in order to safely stop him. In affirming the defendant's criminal conviction, the Court concluded that "[t]he context of 54-1f requires us to conclude that the term `offense' as used therein includes motor vehicle violations." Id., 765.
The Appellate Court has applied the Harrison decision in the context of motor vehicle infractions under General Statutes14-218a and 14-236. Lawlor v. Goldberg, 34 Conn. App. 189,640 A.2d 1016 (1994). In accordance with Harrison, the Appellate Court in Lawlor upheld a license suspension for driving under the influence where the defendant was pursued across town lines for traveling unreasonably fast and unlawfully changing lanes in violation of §§ 14-218a and 14-236 — both infractions. In reaching this conclusion, the court reasoned "this case is controlled by our Supreme Court's recent decision in State v.Harrsion [Harrison]. In Harrison, our Supreme Court interpreted the term `offense' . . . to include motor vehicle violations".
In the present case, the police report, which was in evidence, sets forth the officer's observation that the plaintiff was not wearing his seat belt in violation General Statutes § 14-100a(c) while operating his motor vehicle within Wolcott. The police report further provides that the officer pursued the plaintiff into Waterbury in order to cite him for this motor vehicle infraction. The Lawlor decision holds that municipal police may pursue individuals suspected of motor vehicle infractions across town lines. Against this legal and factual background, therefore there was sufficient evidence to support the finding that the defendant was lawfully stopped in Waterbury by officers of the Wolcott Police Department.
The second prong of the plaintiff's probable cause argument is that the officers had no probable cause to arrest him after the stop. "In order to establish probable cause it is not necessary to produce a quantum of proof sufficient to establish guilt . . . probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that (a crime) has been committed." State v. Torres, 182 Conn. 176, 189,438 A.2d 46 (1980). "Judicial review of the commissioner's action . . . is very restricted . . . . The credibility of witnesses CT Page 64 and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the commissioner, [the court] cannot disturb the conclusion reached by him." Lawrence v. Kozlowski, supra, 171 Conn. 707-8. A review of the record, as summarized above, establishes that there was substantial evidence in the form of the police officer's report which reasonably supports the hearing officer's finding of probable cause for the plaintiff's arrest. This is true notwithstanding the introduction of conflicting testimony by the plaintiff. Accordingly, this court affirms the determination of the commissioner on this issue.
The plaintiff's second argument is that the Commissioner improperly imposed a one year suspension rather than a six month suspension. The basis of this argument is the plaintiff's assertion that his driving history was not made part of the administrative record. The Commissioner counters that a driving history may be considered despite the fact that it was not introduced into evidence.
General Statutes § 14-227b(h) determines the duration of administrative suspensions and provides in pertinent part:
 The commissioner shall suspend the operator's license . . . of a person . . . against whom, after a hearing, the commissioner . . . renders his decision . . . for a period of . . . one year if such person has previously had his operator's license or nonresident operating privilege suspended under this section.
General Statutes 14-3, entitled "Powers and duties of commissioner," provides in relevant part: "Said commissioner shall enforce the provisions of the statutes concerning motor vehicles . . . . Said commissioner shall keep a record of proceedings and orders pertaining to the matters under his jurisdiction and of all licenses and certificates granted, refused, suspended or revoked by him and of all reports sent to his office." In determining the length of a suspension, the Connecticut Supreme Court has held that the Commissioner "was not precluded from examining the plaintiff's past records kept by him. . . . He may act upon facts which are known to him even though they are not produced at the hearing." Balch PontiacBuick v. Commissioner of Motor Vehicles, 165 Conn. 559, 567,345 A.2d 520 (1973). CT Page 65
Turning now to the facts of the present appeal, the court finds that the Commissioner correctly calculated the suspension period. General Statutes § 14-3 requires the Commissioner to maintain records of previous suspensions and the Balch-Pontiac
decision permits an inspection of these records in order to determine the length of a suspension. For these reasons, the Commissioner was entitled to consider the plaintiff's driving history despite the fact that it was never introduced into the record. The plaintiff's driving history indicates that his license was suspended on October 31, 1992 for driving under the influence of liquor (ROR, Item 5). Against this legal and factual background, there was sufficient evidence to support the one-year suspension of the plaintiff's drivers license pursuant to 14-227b(h). Accordingly, the court affirms the Commissioner's determination on this issue.
Having resolved all issues in favor of the defendant Commissioner, this court dismisses the plaintiff's appeal.
KULAWIZ, J.