[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this administrative appeal, the plaintiff, Nikki Rhodes, appeals from a decision of the Commissioner of the Department of Motor Vehicles ("DMV") suspending her motor vehicle operator's license for a period of six months pursuant to General Statutes § 14-227b. This appeal, brought pursuant to General Statutes § 4-183, questions whether there was substantial evidence presented at the administrative hearing to support a finding of refusal to submit to an alcohol breath test. The specific issue involved is just how much latitude law enforcement authorities must afford a person arrested for driving while intoxicated to decide whether to submit to a chemical test. This court's answer, based on the underlying facts, is not as much latitude as this plaintiff wanted.
The record in this case reveals the following facts, which are undisputed. On May 30, 1998, at approximately 10:25 p. m., Trooper C. Bartolotta, Troop L, Connecticut State Police, was following the plaintiff's vehicle on Route 6 in Woodbury, Connecticut. The Trooper watched the vehicle cross over the double yellow line approximately one-quarter to one-half a car width into the westbound lane. Upon rounding the next curve, the plaintiff's vehicle crossed over the double yellow line one-half a car width, at which point the trooper activated the emergency lights. Trooper Bartolotta followed the plaintiff's vehicle for approximately 1.2 miles, while two vehicles in front of the plaintiffs yielded to the shoulder. Finally, the plaintiff pulled her vehicle to the shoulder of the road. The Trooper asked the plaintiff for her license and registration, which took the CT Page 12362 plaintiff several minutes to produce. During that time, Trooper Bartolotta detected an odor of alcohol coming from on or about the plaintiff. The Trooper also observed the plaintiffs eyes which were extremely glassy and bloodshot. After being asked how much she had to drink, the plaintiff replied: "Nothing." (Return of Record ("ROR"), Item 3, State's Exhibit A.) When asked the last time she had something to drink, the plaintiff replied: "I had some two hours ago." (ROR, Item 3, State's Exhibit A.) The plaintiff asked the trooper to let her go and indicated that she had taken Benadryl for a bad cold. The trooper then asked the plaintiff to take standardized field sobriety tests. The plaintiff could not recite the alphabet properly, and performed poorly on the horizontal gaze nystagmus, the walk-and-turn, and the one legged stand.
At approximately 10:41 p. m., Trooper Bartolotta arrested the plaintiff for driving while intoxicated in violation of General Statutes § 14-227a. A search of the plaintiff's vehicle revealed several bottles of wine (empty Sutter Home 1.5 liter), tequila and vodka. Prior to leaving the scene, Trooper Bartolotta advised the plaintiff of her Miranda rights. At Troop L, the plaintiff signed her notice of rights at approximately 11:15 p. m., and at 11:17 p. m., the implied consent advisory was read no less than three times, due to the plaintiffs repeating "[w]hat happens if I refuse." (ROR, Item 3, State's Exhibit A.) The plaintiff stated that she didn't know any attorneys to call and didn't want to contact an attorney, but requested some time to think. At 11:22 p. m., the plaintiff asked to contact her husband to talk. After speaking with her husband, the plaintiff informed the trooper that she wanted to have an attorney present. The Trooper told the plaintiff that she could talk to an attorney, but at the testing time, she had the right to consult with an attorney but not to have an attorney present. The plaintiff again asked what would happen if she refused or took the test. The trooper then re-read the implied consent advisory to the plaintiff, three more times.
At approximately 11:36 p. m., the plaintiff again asked to use the telephone (second time), and she told Trooper Bartolotta that her husband informed her that he was contacting an attorney. Trooper Bartolotta told the plaintiff that that was acceptable, but that she had fifteen minutes to arrive at a decision. (The plaintiff had been told by Trooper Bartolotta when she made her initial call that she had ten to fifteen minutes to decide. Thus, the plaintiff was given more time.) Finally, at approximately CT Page 12363 12:01.a.m., May 31, 1998, while the plaintiff was on the telephone for the fifth time, Trooper Bartolotta informed her that she had five more minutes to come to a decision or it would be considered a refusal to submit to a chemical analysis. The plaintiff informed Trooper Bartolotta that she had spoken to her attorney, who was en route, and that she would only make a decision when her attorney arrived. Trooper Bartolotta contacted the desk trooper, TFC Buthe, in order to have him witness the conversation. Trooper Buthe again explained what was occurring if the plaintiff did not submit to the breath test, but the plaintiff continued to state she would wait until her attorney arrived. Finally, at 12:09 a.m. (1 hour and 44 minutes after the initial vehicle stop, and more than 45 minutes after the plaintiff had been first allowed a telephone call), Trooper Bartolotta noted a refusal to submit to a chemical analysis based upon what appeared to be delaying tactics and the totality of the circumstances. That refusal was witnessed by Trooper Buthe.
Thereafter, at 12:19 a.m., the plaintiffs attorney telephoned and advised the plaintiff to submit to the test. The plaintiff became belligerent, stating she had never refused and wanted to take the test. Trooper Bartolotta would not change the refusal notation.
The plaintiff requested an administrative hearing, at which she testified. The DMV hearing officer, Attorney Jeffrey Donahue, issued a decision in which he upheld the suspension. Here, the plaintiff contends that the hearing officer's finding that the plaintiff refused to take the breath test is clearly erroneous.
The issue presented in this administrative appeal is whether the DMV hearing officer erred in finding that the plaintiff refused to submit to a chemical analysis.
The suspension hearing provided under § 14-227b is limited to four issues.[1] The plaintiff bears the burden of proving that the DMV decision to suspend her motor vehicle operator's license was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.Schallenkamp v. DelPonte, 229 Conn. 31, 39 (1994); see also Lawrence v. Kozlowski, 171 Conn. 705, 713-14 (1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2930, 53 L.Ed.2d 1066
(1977).
In the present case, the plaintiff testified at the DMV CT Page 12364 administrative hearing. She testified that she thought that she did have the right to not only speak to an attorney by telephone but also to have an attorney present with her before she made her decision. (ROR, Item 2, Transcript, p. 20.) Of course, this testimony is contradicted by Trooper Bartolotta's police report, the form A-44 and its attachments, in which Trooper Bartolotta informed the plaintiff that she could consult an attorney but that she did not have the right to have an attorney present during the testing. (ROR Item 3, State's Exhibit A, p. 6.) Additionally, the plaintiff denied any refusal of the test. However, the mere possibility of drawing two different conclusions from the evidence does not prevent the hearing officer's determination from being supported by substantial evidence. Newtown v. Keeney, 234 Conn. 312, 320 (1995), quotingSamperi v. Inland Wetlands Agency, 226 Conn. 579, 587-88 (1993). Here, the DMV hearing officer was under no obligation to accept the plaintiffs explanation of events. It was the DMV hearing officer's function to determine the issues of fact. Schallenkampv. DelPonte, supra, 229 Conn. 41.
Clearly Trooper Bartolotta went well beyond any legal requirements to afford the plaintiff the reasonable opportunity to contact an attorney in accordance with General Statutes §14-227b(b). Indeed, our Appellate Court has explicitly held that insisting upon the right to speak to an attorney as a condition for taking the test constitutes a refusal. Dalmaso v. Departmentof Motor Vehicles, 47 Conn. App. 839, cert. granted,244 Conn. 923, appeal dismissed, 247 Conn. 273 (1998). There, the Appellate Court held that failure to comply with subsection (b) of General Statutes § 14-227b, which provides the right to telephone an attorney before being tested, is irrelevant in a license suspension hearing. Id., 844. Again, a license suspension hearing pursuant to § 14-227b(g), is limited to the four issues specified therein. In the present case, the plaintiffs actions were similar to Dalmaso's, except that the plaintiff here had numerous opportunities to telephone an attorney. Once Trooper Bartolotta told the plaintiff that she had to decide whether to take the test or her response would be deemed a refusal (for the first time), the only response by plaintiff to avoid being considered a refusal was an unconditional statement agreeing to take the test. By regulation, the DMV provides that: "A person shall be deemed to have refused to submit to a chemical analysis if he remains silent or does not otherwise communicate his assent after being requested to take a blood, breath or urine test under circumstances where a response may reasonably be expected." CT Page 12365 Regs., Conn. State Agencies § 14-227b-5. In Poluhowich v.DelPonte, Superior Court, judicial district of Litchfield, Docket No. 046988 (September 22, 1988, Dranginis, J.), aff'd,18 Conn. App. 823 (1989), the court held that silence was the equivalent of a refusal. In the present case, since the plaintiff did not, when requested by the trooper after a reasonable opportunity to telephone an attorney, give an unconditional assent to take the test, her response properly was classified as a refusal.
Here, the plaintiff was given numerous opportunities to telephone an attorney and her husband, was asked repeatedly for a decision on whether she would take the test, read the implied consent advisory at least six times, and was warned that her responses would be considered refusals several times. Finally, one hour and forty-four minutes after the vehicle stop, and more than forty-five minutes after the plaintiff had first been allowed a telephone call, the trooper noted a refusal of the test. Thereafter, ten minutes later, one hour and fifty-four minutes after the time of the stop, the plaintiff attempted to agree to a chemical test, which was rejected by the arresting Trooper. The record is devoid of evidence that any test could have been commenced within two hours of the time of operation in order to comply with General Statutes § 14-227b(c).
In the present case, the plaintiff was clearly attempting to "push the envelope." While law enforcement authorities frequently are expected to have the patience of Job, they should not be expected to work miracles. The troopers offered the plaintiff reasonable opportunities well beyond any requirement of law which the plaintiff refused. The plaintiff refused even after having been clearly warned that her failure to assent to a test would constitute a refusal. Under Dalmaso v. Department of MotorVehicles, supra, the plaintiff's actions clearly constitute a refusal. Having given the plaintiff much more leeway than that to which she was legally entitled, the plaintiff's failure to affirmatively communicate her assent to be tested constitutes a refusal pursuant to the statute. Accordingly, the DMV hearing officer's finding in that regard was correct.
Based on the foregoing, the DMV hearing officer's decision will be affirmed, and the plaintiffs administrative appeal is, therefore, dismissed.
Michael Hartmere, Judge CT Page 12366